# HENRY T. WARD ET AL. *vs.* HARRY T. POOR ET AL.

*Wills—Caveat—Form of Issues—Different Questions in Same Issue—
Issue Not Raised by the Pleadings.*

Under a caveat to a will, each issue should be so framed as to enable the jury to give a single answer, one way or the other, to the entire question. Distinct matters of inquiry should not be combined in the same issue.

No issue should be granted under a caveat, unless it involves a matter concerning which there is a dispute between the parties.

It is not competent for the Orphans' Court to deprive one of several caveatees of the right to have transmitted for trial a material issue raised by his pleadings, because that issue is not raised by the pleadings of any of the other caveatees.

When the caveators propose certain issues and the Orphans' Court orders certain other issues, framed by it, to be transmitted for trial, but there is no order refusing to transmit the issues asked for, then on appeal from the order so passed the only question is whether the issues as framed present clearly the questions raised between the parties and the propriety of the issues as proposed is not before this Court on such appeal.

A will and several codicils were propounded for probate. A petition and caveat asked that a large number of issues respecting the will be sent to a Court of law for trial. One of the caveatees admitted that the original will and the first two codicils were revoked, but alleged the validity of the remainder. Other caveatees denied the allegations of the petition so far as relating to the papers beginning with the fifth codicil, but admitted that the original will and the codicils prior to the fifth had been revoked. The Orphans' Court formulated the following issues : (1.) Were all the writings propounded—the original will and the codicils— intended by the testatrix to operate as her last will? (2.) Were any of them revoked after execution? (3.) Were they executed in accordance with the laws of the different States where signed? (4.) Was the testatrix at the times of the execution of the will and codicils of sound and disposing mind? (5.) Were the codicils, beginning with the fifth, obtained by fraud or undue influence? *Held,*

1st. That the issues so ordered were not proper to be transmitted, because they required the jury to pass upon the validity of the original will and the first two codicils concerning which no question was raised by the petition and answers.

2nd. That the issues were also wrong because, even if confined to the

codicils as to which there was dispute between the parties, yet they are so framed that each presents numerous questions likely to confuse the jury, since there are ten separate papers inquired of in most of the issues and as many varying answers might be required ; also because some of the issues assume as facts that the codicils bear certain dates, which was denied by the caveatees ; and also because the third issue submits a question of law.

Cross-appeals from the Orphans' Court of Baltimore City.
The will and codicils referred to in the opinion of the Court are as follows :

*The Will of Elizabeth Blincoe Hooff.*

John M. Johnson,                    Mrs. E. B. Hooff.
          Attorney at law.

*Alexandria, Va.,* December 15, 1888.

I, Elizabeth Blincoe Hooff do give to my daughter, Bettie Rosa Hooff, all of my property by this my last will and if she should die without marrying and leaving *an* heir she I desire to give what may be left to some one of my blood relatives if they are kind as below.    Elizabeth B. Hooff.    Witness John M. Johnson, Lewis McKewsie, George Wise.

*Codicil.* Any one contesting my will as the will or wishes of my daughter shall have no portion of my property.    Elizabeth Blincoe Hooff.

*Codicil No. 2.* If my daughter, B. Rosa Hooff, should marry and any portion of my property be sold the proceeds it shall be reinvested solely in the name of my daughter B. Rosa Hooff. Elizabeth Blincoe Hooff, March 5, 1889.

*Codicil 3*, Oct. 15, 1890.    Having lost my precious daughter I desire *those I leave property to* my administrator to have a monument to my memory when God calls me to Heaven like the one of Josiah Smoots, by the side of those of my beloved children and one hundred dollars to be entrusted legally to Trustees of St. Pauls Church, the interest to be appropriated to keeping the lot in good order the place where they are laid in good repair.    Further I —— as my wishes at present if I should thereafter wish to alter it will do so.    Elizabeth Blincoe Hooff, Feb. 24, 1891.

*Codicil 4.* This with my own hand I write the 15 of Sept.

1892, if any of my relatives shew me simpathy and kindness I will *will* and leave to them part of my property, if they do not I shall leave it to improvement of place where my darling children and myself are laid in St. Pauls Cemetery which are to be made of granite and marble.   Elizabeth B. Hooff.

Mrs. Mary Blincoe Ward or her heirs are not to have any of my property owing to unkindness.   Elizabeth Blincoe Hooff.

John Hoof son of my sister or his heirs are not to have any of my property.   Elizabeth B. Hooff, Feb. 24, 1895.

*Codicil 5.* I leave to Marian Poor if she continues attentive and effectionate to me the use of my house, 1416, Baltimore, Md., while she lives, and at her death I give the house to her daughter, Lilly Joh-son Poor, my house 1416, Bolton St., my other property hereafter I will dispose of—Harry Poor to have a monument like my daughter erected to my memory and administer on my estate and repair the *the* graves of my mother, father, [seal], brother and sister, Virginia, in the yard of the chu-ch in Leesburg.   Elizabeth Blincoe Hooff.

I being of sound mind and body as all who know me will testify, $100 to be put in the —————— Trustees of St. Pauls Church, at my death the repairs of which is to be paid to see and pay the superintendent yearly while or keeping up my yard in cemetary and in church interest he lives to keep my yard in cemitary in repairs he to see while he lives to see it is kept in good repair, Harry Poor to put the 100 dollars in—————— Trustees of St. Pauls Church, Alexandria, the interest of which is to pay my lot repairs, he to see it done while he lives.

Louisa Ogle Beall,                    Elizabeth B. Hooff.
      Sept. 10th, 1899.                              Annan.
Betty L. Smith.          Witness Elizabeth P. Chancellor.
                                        interest
                              Nellie V. Rogers, [Seal.]
Witnesss                              February 24, 1895.
      Marie M. Annan,          W. B. Saffold,
                              Lilly Johnson Poor,
Elizabeth P. Annan,                         Ida G. Kerr.
      March 29, 1899.    Sept. 10, 1889,    Sept. 10, 92-99.

*Friday Morning,* Oct. 13, 1899.

The above will is to remain as written that concerning Marion Poor, my elder sister, Lallys daughter, and her daughter, Lilly I. Poor, after her is to have $500 of Alex. Stock, investment to pay the $500.00 *mortgage* on my Bolten Street, Baltimore house, the mirror over mantle to Marion, the large mirror to Lilly, the linen and cotten sheets and also everything else in my house to Lilly, the balance of my property I leave to Lilly and Harry T. Poor, with the exception of $1,000 to Upton Beall my nephew, son of Matty Beall. E. B. Hooff, Oct. 13, 1899. Marion W. Poor, Lilly J. Poor, Oct. 13, 1899. W. Casey Barry, Gerald I. Barry, Alphonse M. Barry.

The Orphans' Court ordered that the following issues be sent to the Court of Common Pleas to be tried by a jury :

1. Were the paper-writings, one dated at Alexandria, Virginia, alleged to be the last will and testament of Elizabeth B. Hooff, deceased ; one bearing no date alleged to be " Codicil ;" one called and alleged to be " Codicil No. 2," dated March 5th, 1889; one called and alleged to be " Codicil 3," dated October 15th, 1890, and February 24th, 1891; one called and alleged to be " Codicil 4," dated September 15th, 1892; one with no date ; one dated February 24th, 1895; one called " Codicil 5," with no date ; one dated February 24th, 1895; March 29th, 1899, and September 10th, 1899, and one dated " Friday morning, October 13th, 1899," all of said last-mentioned paper-writings purporting to be codicils to the last will and testament of the said Elizabeth B. Hooff, deceased, which were offered for probate on January 4th, 1900, the complete and final last will and testament and codicils of the deceased, and were intended by her to operate as such.

2. Were the said paper-writings purporting to be the last will and testament and codicils of the said Elizabeth B. Hooff, deceased, or either of them revoked after the alleged making and execution thereof.

3. Were the said paper-writings purporting to be the last will and testament and codicils of the said Elizabeth B. Hooff, deceased, or either of them executed in accordance with the

laws of the State of Maryland, or the State of Virginia, with reference to the execution of wills and testaments and codicils, and are they, or either of them valid and operative as the last will and testament and codicils of said Elizabeth B. Hooff.

4. Was the said Elizabeth B. Hooff, at the time of the alleged execution of said alleged last will and testament and codicils or either of them of sound disposing mind, memory and understanding, and capable of executing a valid deed or contract.

5. Were the said paper writings alleged to be codicils to the said Elizabeth B. Hooff's alleged last will and testament, beginning with and at the one first, after the one called and alleged to be " Codicil 4," together with the balance of the paper-writings that follow (dated or not dated), including alleged codicil dated " Friday morning, October 13th, 1899," obtained and procured by fraud or undue influence exercised upon and against her, the said Elizabeth B. Hooff.

The first six issues proposed by the caveatees were as follows:

1. Does the writing numbered " Codicil 5," embrace all the words following, to wit :

*"Codicil 5th."*

" I leave to Marion Poor, if she continue attentive and affectionate to me, the use of my house 1416, Baltimore, Maryland, while she lives, and at her death I give the house to her daughter, Lilly Johnson Poor, my house 1416 Bolton street. My other property hereafter I will dispose of, Harry Poor to have a monument like my daughter erected to my memory and administer on my estate, and repair the graves of my mother, father, brother and sister, Virginia, in the yard of the church in Leesburg. I being of sound mind and body, as all who know me will testify, $100 to be put in the Trustees of St. Paul's Church at my death, the interest of which is to be paid for refixing up my lot in the cemetery, and paid to the superintendent yearly while he lives to keep my yard in cemetery in repair, he to see while he lives, to see it kept in good repair, Harry Poor to put the $100 in Trustees of St. Paul's Church, Alexandria, the interest of which is to pay my lot repairs, he to see it done while he lives."

2. Or does the writing numbered " Codicil 5th," consist of part thereof only, consisting of the following words :

*" Codicil 5th."*

" I leave to Marion Poor, if she continues attentive and affectionate

to me, the use of my house 1416, Baltimore, Maryland, while she lives, and at her death I give the house to her daughter, Lilly Johnson Poor, my house 1416, Bolton street.   My other property hereafter I will dispose of.   Harry Poor to have a monument like my daughter erected to my memory and administer on my estate, and repair the graves of my mother, father, brother and sister, Virginia, in the yard of the church in Leesburg."

3. If the paper-writing numbered " Codicil 5th " does not consist of the words quoted in either of the last two preceding issues, of what words does it consist ?

4. Was the paper-writing numbered " Codicil 5th " signed by Elizabeth B. Hooff or by some other person for her in her presence and by her express direction and attested and subscribed in her presence, by two or more credible witnesses ?

5. Was the paper-writing dated " Friday morning, Oct. 13, 1899," signed by Elizabeth B. Hooff or by some other person, for her in her presence and by her express direction, and attested and subscribed in her presence, by two or more credible witnesses ?

6. Was Elizabeth B. Hooff at the time of the execution by her of the paper-writing numbered "Codicil 5th," of sound and disposing mind, and capable of executing a valid deed or contract ?

These were followed by eleven other issues.

The cause was argued before McSherry, C. J., Fowler, Page, Boyd, Pearce, Schmucker and Jones, JJ.

*A. Bernard Chancellor* and *T. Rowland Slingluff,* for Henry T. Ward *et al.;* caveators.

*D. K. Este Fisher,* for Harry T. Poor *et al.*

*James E. Godwin,* for Upton Beall.

Pearce, J., delivered the opinion of the Court.

Henry T. Ward and others filed a caveat in the Orphans' Court of Baltimore City to the will of Elizabeth B. Hooff, and also filed a petition asking that thirty-nine issues should be

sent to a Court of law for trial. Harry T. Poor and others being all the caveatees except one, Upton Beall, answered the caveat and proposed seventeen issues to be sent to a Court of law. Upton Beall filed a separate answer. It does not appear from the record that he proposed any specific issues, though his counsel states in his brief that issues asked for by him were granted. What the record shows is that the Orphans' Court ordered five issues, apparently framed by it, to be sent for trial to the Court of Common Pleas of Baltimore City, but there is no order refusing to transmit any of the issues asked for, either by the caveators or caveatees. Both the caveators and the caveatees, except Upton Beall, appealed from the order directing the five issues above mentioned to be sent to the Court of Common Pleas, and we shall request the Reporter to set out these issues at length.

The only matter thus properly before this Court is whether these five issues actually ordered to be transmitted for trial present fairly and clearly the substantial questions between the parties proper for the consideration of a jury, in order to determine the validity of the will; and the numerous cases in which similar questions have been presented in this Court have resulted in clear and definite rules upon the subject. Issues sent from an Orphans' Court to a Court of law for trial, "ought to be framed concerning the persons named, and the matters set forth in the petition and the answer." *Richardson* v. *Smith,* 80 Md. 92; *Gross* v. *Burneston,* 91 Md. 389. " An issue is formed by affirming a matter on one side, and denying it on the other." *Little Sisters of the Poor* v. *Cushing,* 62 Md. 420. Resorting to the petition and answers in this case, it will be seen that the material averments of the petition are as follows :

1st. That the papers purporting to be the last will and testament of Elizabeth B. Hooff are not her complete and final last will and testament and codicils, and were not intended by her to operate as such.

2nd. That all said papers were revoked after their alleged making and execution.

3rd. That said papers are not her last will and testament and codicils, but that she died intestate.

4th. That said papers are invalid as her last will and testament.

5th. That they were not executed in accordance with the laws of Virginia and Maryland, some having been executed while she resided in one State, and some while she resided in the other.

6th. That she was not of sound mind at the time of the execution of any of said papers.

7th. That all said papers alleged to be codicils, beginning with the 5th codicil, were obtained by undue influence; and

8th. That all these last named papers were obtained by fraud.

Upton Beall, answering the first, second and fourth averments of the petition admits that the original will and the two codicils immediately succeeding it were revoked, and avers that all the residue of these papers, in the form in which they are proposed, constitute, and were intended by her to operate as, her complete and final will. Answering the third averment, he denies that she died intestate. Answering the fifth, he avers that the last six papers are not invalid as her last will and testament, and answering the sixth, he avers that these six papers are executed in accordance with the laws of Maryland and Virginia. In answer to the seventh, eighth, and ninth averments, he denies that she was at any time of unsound mind, or that any of said papers were obtained by undue influence or fraud. The amended answer of the other caveatees denies all the averments of the petition so far as relate to the papers, beginning with that called Codicil 5 and the following paper of October 13th, 1899, and avers that these last named papers, together, constitute, and were intended by her to operate as, her final and complete will, and were executed in accordance with the laws of Virginia and Maryland, but admits that the original will and all codicils prior to the fifth were revoked, and avers that all the papers which precede the fifth codicil were insufficiently executed. It thus appears that under the contention between the caveators and Upton Beall, the original will and codicils one and two, are eliminated from the issues

raised by the petition, and that under the contention between the caveators and the other caveatees, all the papers which precede Codicil 5 are eliminated from the issues raised by the petition. *Munnikhuysen* v. *Magraw*, 57 Md. 191. Of course it is not competent to deprive one caveatee of the right to submit a material issue raised by *his* pleading, because that issue is not raised by the pleading of any of the other caveatees, though it is not apparent how Upton Beall, who is neither one of the next of kin, nor of the heirs at law, is interested in any issue not affecting the paper of October 13th, 1899, as under that alone can he become a beneficiary.

But whether the issues are considered under either contention, none of them are proper issues to be transmitted for trial, because they all require the jury to pass upon all the papers proposed for probate, while as to the original will and codicils one and two, there is no issue evolved from the pleadings of any of the parties. " It is not competent and proper to frame issues in a case where there is an entire agreement between the parties before the Court as to the facts alleged." *Munnik-huysen* v. *Magraw*, 57 Md. *supra; Cain* v. *Warford*, 3 Md. 462. But apart from this objection, the issues transmitted are faulty, because, even if confined to those papers as to which there is dispute, they are so framed, while ostensibly presenting a single question, as in reality to present numerous questions, since each issue relates to all the papers offered for probate.

In *Richardson* v. *Smith, supra,* this Court, considering an issue from the Orphans' Court, quoted LORD COKE's definition of an issue, which he declared to be " a single, certain and material point issuing out of the allegations of plaintiff and defendant ; " and in *Barth* v. *Rosenfeld,* 36 Md. 617, treating of issues from a Court of equity the Court quoted the same definition as adopted by 1 *Chitty on Pleading,* 653. Under this rule and definition, each issue should be so framed as to enable the jury to give a single answer one way or the other to the entire question. *Taylor* v. *Nuttle,* 62 Md. 345. Whereas, there being ten separate papers inquired of in each of these

five issues, as many varying answers to each issue might be required, and the result would be certain confusion in the minds of the jurors in separating these papers, and in reaching and declaring their conclusions in regard to each ; or, an issue might be answered as to one or more of the matters embraced in each, and left unanswered as to others, so that the verdict as a whole might be utterly inconclusive. Moreover, the first and fifth issues, in assuming that some of these papers bear certain dates, and that others are without date, assume as facts what it appears as well from the printed record as from an inspection of the original will and codicils produced at the argument, and from the photographic copy thereof filed with the briefs, are contested matters of fact, and ought therefore to be left with the jury. The third issue submits, in the form it bears, a clear question of law. For these reasons there was error in transmitting the issues sent to the Court of Common Pleas.

The salutary rule against multiplying the issues unnecessarily, cannot be complied with by combining in one issue distinct material matters of inquiry, demanding for their proper solution separate consideration, and for their clear and intelligent declaration, separate and distinct answers. The photographic copies of the papers propounded as the will and codicils in this case abundantly show that these papers present unusual perplexities and difficulties both as to form and execution, and the numerous material points which we have seen do arise out of the pleadings, show that if the rule as to single issues is observed, the issues must be numerous, though scarcely so numerous as those here proposed by the caveators. We may properly say, without going into the consideration of the issues proposed by the caveators and caveatees, which we have said are not brought before us by those appeals, that we approve in a general way of the form and scope of the issues proposed·by the caveatees, except Upton Beall, as well adapted to present clearly the several material points·involved, and to secure single affirmative or negative answers to each.

Especially is it necessary to submit in some properly framed

issues, such questions as will enable the jury to declare with accuracy what words are embraced in and constitute Codicil 5, after the manner attempted in the first, second and third issues proposed by the caveatees, though we are not to be understood as specifically approving any of those issues as proper to be transmitted, since we regard them as not before us.

The order of the Orphans' Court must be reversed, and the case remanded for further proceedings in conformity with this opinion.

*Order reversed and case remanded.*