## JOHN E. KELLY *vs.* GEORGE J. KELLY AND MARY A. MURPHY.

*Wills—Caveat—Testamentary Capacity—Evidence—Contradicting Witness.*

A question to a witness relating to the testamentary capacity of a decedent should be limited to his capacity at the time he made the will.

Hearsay evidence as to what a witness had been told was said by the testator, out of his presence, is incompetent.

A hypothetical question to a medical expert is improper when it assumes facts of which there is no evidence in the case, or when it allows the witness to base his opinion upon the inferences of other witnesses.

When a testator states in his will, as a reason for not bequeathing anything to certain of his children, that he had advanced to them their shares of his estate, and one of these children testifies that she repaid the money so stated to have been advanced, evidence to contradict this testimony is admissible.

The evidence in this case examined and held to be legally insufficient to show that the testator was not mentally capable of executing a valid will.

Appeal from the Superior Court of Baltimore City (BAER, J.)

The cause was argued before McSHERRY, C. J., BRISCOE, BOYD, SCHMUCKER, and BURKE, JJ.

*Thomas G. Hayes* (with whom were *Lee, Hatton & Tyson*, on the brief), for the appellant.

1. The first error complained of was permitting certain non-expert witnesses to give their opinions that the testator was wanting in testamentary capacity, without requiring these witnesses to limit their opinions, as to the testamentary capacity of the testator, to the date of the execution of the will. This was a palpable error. *Davis* v. *Calvert*, 5 G. & J. 300; *Brashears* v. *Orme*, 93 Md. 447; *Jones* v. *Collins*, 94 Md. 410; *Gesell* v. *Baugher*, 100 Md. 682.

2. The hearsay evidence admitted of certain alleged state-

ments made by the wife of the caveatee and appellant as to the testator having told her that he had seen bugs on the wall as big as crabs was clearly error for several reasons:

(a) It is a bald hearsay statement of Mrs. Kelly and not in the remotest degree binding on the caveatee and appellant. *Baumgarten* v. *Eigenbrot*, 100 Md. 508.

(b) There was no proof to show that the testator did not in fact see bugs on the wall as big as crabs. The hearsay statement is lacking in anything to show it was even an hallucination. It may have been true and have actually occurred in the experience of the testator. The time when the alleged statement was made by the testator is indefinite.

(c) Assuming now that it was in fact an hallucination which did occur at some time in the life of the testator, it was at best but a single *transient* hallucination, and was not admissible in evidence on the question of testamentary capacity. *Gesell* v. *Baugher*, 100 Md. 686.

(d) If it had been a statement of the caveatee and appellant and not his wife, made by him as to what he heard the testator say before he qualified as executor or become a beneficiary or legatee under the will, it would not have been admissible, even then, in evidence. *Berry* v. *Safe D. Co.*, 96 Md. 65.

3. The hypothetical question put to the medical expert, Dr. Flanery, called by the caveator and appellee, violated nearly every principle of law applicabls to such questions. a. It was not based on facts proven. b. Inferences of witnesses were inserted in it. c. The facts given were wrongly colored and partial. d. Each incident contained in the question was insufficient in itself, as said by the expert, to enable him to say that testamentary capacity was wanting, but an aggregation of these insufficient incidents did enable him, as he said, to give as his opinion that the testator had not testamentary capacity to execute the will. This basis of his opinion was illegal as said by this Court, "If each proves nothing, all can prove no more," and again, "The sum of any number of zeros will always be zero, and this is true in the law of evidence as well

as in arithmetic." *Berry* v. *Safe D. Co.*, 96 Md. 56; *Forsythe* v. *Doolittle*, 120 U. S. 77; 1 *Wigmore on Ev.*, sec. 672, p. 767; *The ·Berry Will case*, 93 Md. 569; *Electric Lt. Co.* v. *Lusby*, 100 Md. 651; 17 *Cyc.*, 244; *Watts* v. *State*, 99 Md. 30.

4. The prayer directing the jury to answer the issue involving the testamentary capacity of Owen Kelly "Yes" should have been granted and the jury directed to find on this issue for caveatee and appellant, John ·E. Kelly, as there was no legally sufficient evidence to show want of testamentary capacity in Owen Kelly, the testator, when he executed the will in question. The exclusion of the inadmissible and illegal testimony of Dr. Flanery, Mrs. Kelly and Mrs. Murphy, left not a scintilla of evidence to show the impairment of Owen Kelly's testamentary capacity or overcome the presumption of sanity. *The Berry Will case*, 93 Md. 588; *Gesell* v. *Baugher*, 100 Md. 677.

5. The testimony tending to show that the testator's daughter, Mrs. Shea, had kept a certain part of the money entrusted to her custody was relevant and material as confirmatory of the clause in the will which referred to the advancement made to her by the testator. The rejection of this testimony was reversible error.

*J. Cookman Boyd* (with whom was *Peter J. Campbell* on the brief), for the appellees.

BRISCOE, J., delivered the opinion of the Court.

.The questions in this case are presented on an appeal from rulings of the Superior Court of Baltimore City, on a caveat to the will of Owen Kelly, deceased.

There were four issues sent on the 9th· day of ˙May, 1905, by the Orphans' Court to the Court of Common Pleas for trial by a jury. The case was subsequently removed to the Superior Court of Baltimore where the trial was held.

The issues as sent were as follows: First, the execution and attestation of the will; second, the knowledge of the contents

of the will by the testator; third, whether the execution of the will was procured by fraud and undue influence; and fourth, whether the paper writing dated the 15th, day of March, 1905, was executed by the testator when he was of sound and disposing mind and capable of executing a valid deed or contract.

The verdict of the jury was on instruction from the Court for the appellant, the caveatee on the first, second and third issues, and on the fourth issue, as to testamentary capacity was in favor of the appellees, the caveators.

At the trial the appellent reserved twelve exceptions, eleven to the admissibility of evidence, and the twelfth to the granting of the appellee's prayers and to the reject on of the appellants' first prayer, which was to the effect, that there was no legally sufficient evidence to show that Owen Kelly was not of sound and disposing mind, and not capable of executing a valid deed or contract on March 15th, 1905, the date of the execution of the will.

The fifth, sixth, seventh, eighth, ninth and tenth exceptions are not insisted upon in this Court, and are practically waived by the appellant in his brief.

The testator died on the first of April, 1905, of valvular trouble of the heart, in his seventy-eighth year, leaving six children surviving him, viz., John E. Kelly, the appellant, George J. Kelly, Mary A. Murphy, Terence J. Kelly, Francis P. Kelly and Catharine G. Shea.

The will is dated on the 15th of March, 1905, and by the will he bequeaths and devises to his son John E. Kelly absolutely all of his estate, real, personal and mixed, of whatsoever kind and nature, and wheresoever situate.

The value of the entire estate owned by the testator at the time of his death amounted to $1,634.30, consisting of $634.30 in personalty and real estate estimated to be worth $1,000. By the second clause of the will he constituted and appointed his son John E. Kelly executor, and stated therein the following reason for making him sole beneficiary, towit: "That during my life I have made no advances to this, my son, whereas to my other children (naming them), I have heretofore during

my lifetime made advancements, which in my judgment is, and I desire shall be all they should receive from my estate."

The will was drawn by Mr. A. H. Tyson, a member of the law firm of Lee, Hatton and Tyson, of Baltimore, and was executed on the 15th day March, 1905.

Mr. Tyson testified that he took a memorandum of the instructions given him by the testator on the 14th of March, 1905, as to how the will should be prepared, and it was drawn according to those instructions; that he read the will to the testator on the day of its execution, and the testator said, "it was exactly right, it was the way he wanted to leave his estate," that the will was read a second time, in the presence of the testator and the attesting witnesses, at the request of the testator, who stated "that he did not want any trouble about it after he was gone," that when he read it the second time, there were present in the room the testator, John E. Kelly, and the two attesting witnesses, Hugh Bannon and Patrick Cash; and at the time of its execution, "the mental capacity of the testator was very good, and he had perfect ability to execute a valid deed or contract."

The attesting witnesses to the will, Bannon and Cash, who had various interviews with the testator, prior and subsequent to the execution of the will, testified "that they always considered him perfectly capable of executing a valid deed or contract, and he always impressed them as an intelligent man in acts and deeds.

The remaining portion of the evidence set out in the record will be discussed by us, under the twelfth exception, which involved the question of the legal sufficiency of the evidence to establish testamentary capacity at the date of the execution of the will.

We come then to the action of the Court in its rulings upon the admissibility of testimony as contained in the exceptions. The first and third exceptions present practically the same questions, and will be considered together.    They relate to the action of the Court in permitting Mrs. Kelly and Murphy, non-expert witnesses, over the objection of the caveatee, to

give their opinions as to the testamentary incapacity of the testator, without limiting the questions to the date of the execution of the will.

The question asked the witness Kelly and which she answered "He was not," was as follows: "Please state whether or not in your opinion, Owen Kelly was of sound and disposing mind, memory and understanding, and capable of executing a valid deed or contract."

There was obvious error in the rulings on these exceptions. In *Jones* v. *Collins*, 94 Md. 410, it is clearly said, a fatal objection to the question is, that being directed not to the proof of capacity, but of incapacity, it is essential to show that such incapacity existed at the date of the execution of the will, and the question fails so to direct or limit the inquiry, so that, if answered it would not have been possible to say that the witness referred to the time of execution. *Gessel* v. *Baugher*, 100 Md. 682; *Brashears* v. *Orme*, 93 Md. 447.

There was also error in the ruling of the Court in the second exception.

The witness, Mrs. Murphy, one of the caveators, among other things testified as follows:

Q. Did you ever hear him (meaning the testator) say anything about things on the wall?

A. I never heard him say it, but I heard John E. Kelly's wife say it.

Q. What did you hear John E. Kelly say (objected to on the ground that she did not say John E. Kelly.)

Q. What did he say?

A. He said, my father said he could see large bugs walking up the wall, as big as crabs, and he read the paper upside down and he would steal bread off the table.

To the action of the Court overruling the objection, and permitting the question to be asked and answered, and in permitting the answer to be received as evidence, the caveatee excepted.

The hearsay testimony here admitted was manifestly inadmissible and should have been excluded. If the statement

was made by the wife of John E. Kelly, the evidence was hearsay, and not admissible. No date or time when the statement was made appears from the evidence and even if it be admitted that it was made by John E. Kelly, the sole beneficiary, it was inadmissible as an admission of the insanity of the testator at the time he made the will. In *Gessel* v. *Baugher,* 100 Md. 688, this Court said: The presumption of law being in favor of sanity and testamentary capacity, the evidence to support a caveat on the issue of insanity must ordinarily tend to show either that the testator was of unsound mind at the time of the execution of the will, or that he was affected with permanent insanity prior to the execution. And in *Berry* v. *Safe D. Co.,* 96 Md. 65, it was further said: No declaration made by an executor before his qualification, can be received against him, as the representative of the estate or bind legatees, distributees or creditors.

The fourth exception relates to the hypothetical question asked the medical expert, Dr. Flannery, and the answer given by him. The question and answer cover over two pages of the record, and the defects in the question are both numerous and apparent. It contains assumption of facts founded upon hearsay testimony, and assumed other facts not supported by the evidence. There was no evidence, as we have seen, legally sufficient to sustain the statement inserted in the question that the testator had stated after his return from Savannah, that he had seen bugs crawling up the wall as large as crabs. The question also contains the conclusions and inferences of witnesses. and not the actual facts as they had been proved in the case. In *Williams* v. *State,* 64 Md. 384, it is said. While an expert may give his opinion upon facts assumed to have been established, it would be against every rule and principle of evidence, to allow him to state his opinion upon the conclusions and inferences of other witnesses.

There are other valid and fatal objections to the hypothetical question, propounded in this case, but as we are of the opinion there was no proper foundation laid for the expert to base an opinion upon, it will not be necessary to state the

other objections here.   The objection to the question for the reasons stated should have been sustained.

The eleventh exception was to the ruling of the Court, in granting a motion to strike out certain testimony tending to contradict the statement of Mrs. Shea, to the effect, that she had returned the money, stated in the testator's will, to have been advanced.

This testimony was not only material and relevant, as tending to impeach or contradict the testimony given by the witness, but was admissible as confirmatory of the declaration in the will, that he had advanced her the money.   The ruling in this exception was erroneous for the reasons given.

This brings us to a consideration of the rulings upon the prayers, which are embraced in the twelfth exception.

The caveatees' first prayer, that there was no legally sufficient evidence to show that the testator was not of sound and disposing mind, and not capable of executing a valid deed or contract on March 15th, 1905, the date of executing the will in question and the jury should answer the fourth issue, yes, should have been granted.

There was no evidence whatever tending to show permanent insanity on the part of the testator.  The whole testimony of the caveators was directed to a certain mental impairment caused by grief, from the death of his wife, in July, 1903.

There was no evidence legally sufficient from which a jury could reasonably find that the testator was mentally incapable of executing a valid will on March 15th, 1905, the date of the will.   And with the excluded testimony of Mrs. Kelly, Mrs. Murphy and Dr. Flannery, the medical expert, out of the case there is no evidence whatever tending to establish the contention of the caveators.   On the contrary, the testimony shows that the testator was a man of strong resolution and firmness, and was fully capable of transacting business, on the date of the will, in question.

On November 3rd, 1904, four months before the execution of the will, he visited Savannah, Ga., and returned alone with a demented daughter and her children.

The counsel who prepared the will, the attesting witnesses, the attending physician, Dr. Pierce, the expert witness, Dr. Preston, and other witnesses examined on behalf of the appellant, testified that the testator on the 15th day of March, 1905, was mentally capable of executing a valid deed or contract. The fact relied upon by the appellees, that the testator by his will gave all of his property to his son, cannot defeat or invalidate the will, if the testator had the necessary mental capacity, and was free from undue influence when he executed it. *Hiss v. Weik*, 78 Md. 448; *Gessel v. Baugher*, 100 Md. 688.

For the reasons we have given the rulings appealed from must be reversed and the cause remanded.

*Rulinge reversed and cause remanded.*