## PETER COUGHLIN ET AL.

### *vs.*

## WINIFRED CUDDY, EXECUTRIX OF THE ESTATE OF WINIFRED CUDDY, DECEASED.

*Experts: examination; hypothetical questions. Will cases: attesting witnesses.*

Witnesses who are not experts and not attesting witnesses must disclose such facts and such adequate means of knowledge as to qualify them as non-expert witnesses before they will be allowed to express an opinion as to the sanity of the testator.

p. 82

There must be a proper foundation laid to qualify such witness to express such an opinion. p. 82

A hypothetical question to experts, which contains the conclusions, opinions and inferences of witnesses, is improper.

p. 83

*Decided February 15th, 1916.*

Appeal from the Superior Court of Baltimore City. (DUFFY, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER and STOCKBRIDGE, JJ.

*Emory L. Stinchcomb* and *George Ross Veazey,* for the appellants.

*Randolph Barton, Jr.,* (with whom was *James J. McGrath* on the brief), for the appellee.

BRISCOE, J., delivered the opinion of the Court.

This case presents the rulings of the Superior Court of Baltimore City, upon the trial of issues, on a caveat to the last will and testament of Miss Winifred Cuddy, late of Baltimore City, deceased.

Five issues were sent by the Orphans' Court of Baltimore City, for trial, and they are set out in the record.

The real controversy in the case, relates to the third issue, and that is as to the testamentary capacity of the testatrix, at the time of the execution of the will. The third issue, is as follows: Whether the paper writing, dated the fifth day of September, nineteen hundred and thirteen, purporting to be the last will and testament of Winifred Cuddy, was executed by her when she was of sound and disposing mind, and capable of making a valid deed or contract.

At the trial of the case, the caveators reserved seventeen exceptions, to the rulings of the Court, upon questions of evidence and the eighteenth, embraces the rulings upon the prayers.

The action of the Court, on these rulings it will be seen forms the subject of this appeal.

At the conclusion of the testimony upon the part of the caveators, the Court below granted the defendant's five prayers, withdrawing the case from the consideration of the jury and instructing a verdict for the defendant upon each of the five issues.

The defendant's third prayer, and the one presenting the question of the testamentary capacity of the testatrix is as follows: That there is no evidence in the case legally sufficient to prove that the paper writing dated the 5th day of September, 1913, purporting to be the last will and testament of Winifred Cuddy, was executed by her when she was not of sound and disposing mind and capable of making a valid deed or contract, and therefore as to the issue, the third, the verdict of the jury must be for the defendant, and their answer to said issue must be "yes."

The jury found a verdict in favor of the caveatees upon all the issues, and the real questions are raised upon exceptions to the rulings of the Court, upon the admission of certain testimony or opinions of the lay and expert witnesses and upon the granting of the caveatee's third prayer, as to the testamentary capacity of the testatrix, as heretofore stated.

The facts of the case are these. Miss Winifred Cuddy, the testatrix, was born in Ireland and came to this country in 1860, and died on the 18th of March, 1914, in the 73rd year of her age. She never married, and left surviving her the appellant caveators, children of a deceased sister, and two brothers, Michael and Peter Cuddy. Michael Cuddy died after the testatrix, leaving two sons and two daughters. The testatrix left also two nephews and two nieces, brothers and sisters of the caveators.

The caveatee, the defendant, in the case, is a niece of the testatrix and the executrix and the residuary legatee, named in the will.

The value of the property left by the testatrix amounted to about $15,000 consisting principally of deposits in Savings banks, which she had accumulated and saved, in her lifetime.

By the will she gave and bequeathed the bulk of her estate to the Cuddy branch of the family.

By the first, third, fourth, fifth and sixth items of the will she gave specific legacies to the members of the Michael Cuddy family, amounting to $2,700.

By the seventh item, she gave and bequeathed as follows:

"To my nephew, the Rev. John S. Cuddy, the sum of four thousand dollars in trust, to apply the same towards the support, maintenance and education of my grandnephew, Michael Cuddy, grandson of my brother Michael Cuddy, during his studies for the priesthood, and I authorize and empower the said Rev. John S. Cuddy to expend said sum or any part or parts thereof as he may think best, in any manner or form, and at any time or times that he may deem expedient to carry

out the aforesaid purpose, giving him sole and absolute discretion as to the control and expenditure of said sum and as to the periods, amounts and nature of the payments to be made by him. In the event of there being a balance of said sum remaining at the time my said grandnephew is ordained a priest, then I give and bequeath said balance to my nephew the Rev. John S. Cuddy and my said grandnephew Michael Cuddy, to be equally divided between them, share and share alike. In the event of my said grandnephew Michael dying before being ordained a priest, or abandoning his education for the priesthood, then I give and bequeath any balance of said sum that may remain, to my nephew, the Rev. John S. Cuddy, absolutely."

By the second, eighth and eleventh items she gave the sum of $700 to her brother Peter Cuddy's family.

By the ninth and tenth items, she gave legacies to two members of the Coughlin family, amounting to two hundred dollars.

By the twelfth to the eighteenth items she gave and bequeathed, the sum of $900 to be expended for Masses for the repose of her soul and for certain named members of her family and for the maintenance of her grave.

By the nineteenth and twentieth items she gave the rest and residue of her estate to her niece, Winifred Cuddy, and appointed her as executrix of her will.

The will was prepared by James J. McGrath of the Baltimore bar, and witnessed by him, and by Mr. Aubrey Pearre, Jr., also of the Baltimore bar, and was executed by the testatrix on the 5th day of September, 1913.

Mr. McGrath testified, that Miss Cuddy called at his office three days before the will was executed and on the fifth day of September, 1913, she came to his office with the will, which he had drawn, and stated that she was satisfied with it, and understood it and would like to execute it and that she wanted me for a witness and also another member of the firm to be a witness, as she understood that there were to be

two witnesses. "I called Mr. Pearre into the room as she said she would like for him to witness the will. She stated she could not write and would like to make her mark; Mr. Pearre wrote the words 'Winifred Cuddy' and then she touched the pen while they made the cross-mark, and I wrote the words 'her mark' and dated the will. Mr. Pearre then wrote the words 'Winifred Cuddy' on each page and the cross mark between was made by her, and Mr. Pearre and I then placed our initials on each page as witnesses. I signed in his presence and he signed in my presence and Miss Cuddy touched the pen and made her mark in the presence of both of us; everything that was done was done in our presence and in the presence of each of us. The will was read over to her and she must have been in my office an hour before it was executed; as I read it over to her she sat talking to me and she discussed each provision of it and she said, she was satisfied as it was the way she wanted it; I read the whole will to her that afternoon and discussed each provision with her, and it had been read over to her three days before that also. Q. Did she bring it in that afternoon herself? A. Yes, she brought it in herself. On cross-examination witness said, "About three days before the will was executed she came in with the old will, and wanted this new one drawn up and I told her to come back the next day, and I would have it ready for her, which I did; three days previously I wrote it and she carried it away with her, and brought it back. Q. Who was with her? A. She was by herself. Q. You say she came there with the old will, what happened to that? A. She destroyed that in my presence, tore it up with her own hands, and threw it in my waste-basket. Q. There is no copy of it? A. No; no copy of it. Q. You say she came back the next day and got the one? A. She came back the next day and got the new will after I had it typewritten for her and told her I would have it ready that afternoon. Q. Did she destroy the old will before the new will was made or afterwards? A. She destroyed the old will after this one

had been executed.   Q. While Mr. Pearre was there?   A. Mr. Pearre was right there in the room.

Mr. Aubrey Pearre, Jr., testified, that he was a member of the bar and of the firm of Barton, Wilmer, Ambler and Stewart and Mr. McGrath, was also a member in September 1913, that he was requested by Miss Cuddy on September 5th, 1913, to witness her will.   I asked her whether the paper offered in evidence was her will and whether she desired Mr. McGrath and myself to witness it, and she told me that she did; then after some conversation I learned that she could not write and I wrote the words "Winifred Cuddy" and she then took hold of the top of the pen while I made the cross between the two words; Mr. McGrath then wrote the words "her mark"; I then wrote my signature as one of the attesting witnesses and the word "Winifred Cuddy" on each of the other pages, having Miss Cuddy hold the pen while I made a cross mark between these words, and I writing the words "her mark" above and below the cross, and I then placed my initials under the word "witness" on each page; and that Miss Cuddy made the cross mark in my presence and that of Mr. McGrath's, and that I signed my name and initials as a witness in the presence of Miss Cuddy and Mr. McGrath and that Mr. McGrath did likewise.   The three of us were in the office at that time and we remained in the office until each signed.   Mr. McGrath signed his name in my presence and I waited until he had done that, and we again asked her whether she declared that to be her will, and she said that she did, and asked us to witness it; we were all in the office during the respective signing of our names, and we signed them in her presence and in the presence of each other; Miss Cuddy was also there; we were within two feet of each other during the whole time, one standing on one side of the swivel chair and the other on the other.

Dr. Joseph E. Saunders, the family physician testified, that he attended the testatrix first about 1905, and subsequently about once or twice a month down to 1913, that she died on March 18th, 1914, of acute indigestion and diabetic

coma, having been treated by him for diabetes for about ten years.

The remaining portion of the evidence will be considered by us, under the eighteenth exception, which presents the question of the legal sufficiency of the evidence to establish testamentary capacity at the time of the execution of the will.

This brings us to the rulings upon the admissibility of testimony.

The first exception was abandoned at the argument in this Court.

The second, third and sixth exceptions, it is admitted, involve minor points of evidence, and there was no error in the rulings thereon.

In the fourth, fifth, seventh and eighth exceptions, certain non-expert witnesses were asked, as a result of your contact with her did you form any opinion as to her mental soundness and her ability to execute a valid deed or contract on or about the 5th of September, 1913.

None of these witnesses were experts or attesting witnesses to the will and they did not disclose such facts and such adequate means of knowledge as qualified them, as non-expert witnesses to express an opinion. They did not, therefore, fall within the rule which allows this class of witnesses to testify as to the mental capacity of the testatrix. There was no proper foundation laid to qualify these witnesses to express an opinion and the objection to the questions asked, in all four of the exceptions was properly sustained. *Berry Will Case,* 93 Md. 560; *Harris* v. *Hipsley,* 122 Md. 435; *Kennedy* v. *Kennedy,* 124 Md. 44; *Whisner* v. *Whisner,* 122 Md. 204; *Smith* v. *Shuppner,* 125 Md. 418.

The ninth to the seventeenth exceptions present the rulings of the Court in refusing to permit Dr. Bruns and Dr. Owensby, two medical experts, from answering the questions set out therein, and to express an opinion as to whether or not the testatrix was of sound and disposing mind and

capable of executing a valid deed or contract, on the 5th day of September, 1913.

These witnesses, it will be seen, were permitted to state, at length their views on certain mental diseases and insanity, but we find no reversible error, in the rulings of the Court, in sustaining the objections and excluding the testimony contained in these exceptions.

The hypothetical question propounded to these witnesses covers seven pages of the record, and was clearly inadmissible. It not only contains the conclusions, opinions and inferences of the witnesses, but was based upon all the testimony of the plaintiffs, as they were the last two witnesses examined in the case. *Kennedy* v. *Kennedy,* 124 Md. 44; *Kelly* v. *Kelly,* 103 Md. 554; *Williams* v. *State,* 64 Md. 384, and *Baltimore City* v. *Park Corp.,* 126 Md. 367.

In *Harris* v. *Hipsley,* 122 Md. 433, CHIEF JUDGE BOYD said: It seems to us that such testimony of an expert is too clearly inadmissible to require the citation of authorities on the subject, but if any be desired, what was said in the *Berry Will case,* 93 Md. 560, and *Berry* v. *Safe Deposit Co.,* 96 Md. 58, is sufficient.

The seventeenth exception was to the action of the Court in granting the appellee's motion to strike out the testimony of the non-expert witnesses, and for the reasons stated by us, in considering the fourth to the ninth exceptions, there was no error in this ruling.

The rules of law laid down and announced by this Court in *Gessel* v. *Baugher,* 100 Md. 678; *Horner* v. *Buckingham,* 103 Md. 556, and *Robinson* v. *Jones,* 105 Md. 62, are clearly applicable to this branch of the case, and need not be restated by us.

The caveatee's third prayer, which directed a verdict for the defendant, on the third issue, was properly granted.

We have examined the case with care and find no evidence legally sufficient from which a jury could reasonably find that the testatrix was mentally incapable of executing a valid will on the 5th of September, 1913.

.On the contrary, the evidence shows that the will was prepared by a lawyer of ability and he has stated all that occurred at the time of its execution.   The will was drawn according to her directions, was read over several times to her and she stated that she understood it and was satisfied with its provisions.   She had a full understanding of its contents and of the nature of the business in which she was engaged, a recollection of the property which she intended to dispose of and the persons to whom she gave it, the manner in which she in fact disposed of it, and the relative claims of the different persons who are, or should be the objects of her bounty.

The proof, we think, clearly brings this case within the rules and requirements established by the adjudged cases to constitute a valid deed or contract and the rulings of the Court below will be affirmed; *Gesell* v. *Baugher,* 100 Md. 682; *Horner* v. *Buckingham,* 103 Md. 558; *Baugher* v. *Gesell,* 103 Md. 450; *Harris* v. *Hipsley,* 122 Md. 435; *Brown* v. *Fidelity Trust Co.,* 126 Md. 180; *Brown* v. *Ward,* 53 Md. 382, and *Berry* v. *Safe Deposit Co.;* 96 Md. 48.

For the reasons stated, the rulings of the Court below will be affirmed and the case remanded.

*Rulings affirmed and case remanded.*