EMMA QUIMBY ET AL. *v.* WILLIAM THOMAS
GREENHAWK ET AL.

[No. 102, October Term, 1933.]

336

*Decided February 8th, 1934.*

The cause was argued before Bond, C. J., Pattison, Urner, Adkins, Offutt, Digges, Parke, and Sloan, JJ.

*T. Hughlett Henry,* for the appellants.

*Washington Bowie, Jr.,* with whom were *John C. North, Charles J. Butler,* and *Hugh M. Frampton,* on the brief, for the appellees.

Parke, J., delivered the opinion of the Court.

Reuben N. Greenhawk executed a purporting will on February 8th, 1932, whereby, after directing the payment of all his debts and funeral expenses and that his executor provide a fund for the perpetual care of the family burial lot, he gave and devised all his real and personal property to Emma G. Quimby. The testator died on March 3rd, 1932, and his will was produced before the Orphans' Court of Talbot County on March 5th, 1932, by its custodian and executor, Edward T. Miller; and the three subscribing witnesses proved the execution of the will, which was not admitted to probate because notice had been given that a caveat would be filed. The petition and caveat were filed a week later by the three brothers of the testator, William Thomas Greenhawk, John W. Greenhawk, and Charles H. Greenhawk, who were his nearest next of kin and heirs at law. The caveat was based upon the grounds that the will was not duly executed; that the testator was mentally incompetent, and did not know or understand the contents of the will; and that the will was procured by undue influence. An answer was filed by the beneficiary and the executor,

and, finally, six issues were framed by the Orphans' Court, and the record transmitted to the Circuit Court for Talbot County. The case was tried before the court, sitting as a jury, and on the fifth and sixth issues of undue influence and of fraud or duress the verdict was in favor of the caveatees; but on the first issue, which was the testamentary capacity of the decedent; and on the second issue, which was whether the purporting will was signed by the decedent, or by any one for him in his presence and at his expressed direction; and on the third issue, which was whether the paper writing was properly attested and subscribed by two or more credible witnesses; and on the fourth issue, which was whether the decedent knew or understood the contents of the purporting will at the time of its execution, the several verdicts were in the negative and, so, with the caveators. The pending appeal brings up for review ten exceptions taken to the rulings of the court on the evidence, and the eleventh exception, which is to the adverse rulings on the prayers.

Eight of the exceptions arising on objections to testimony relate to the form of hypothetical questions submitted to medical experts, and it will be convenient to consider these first.

It has been the practice in this jurisdiction for some years to permit an expert to express his opinion upon facts in the evidence which he has heard or read, upon the assumption that these facts are true. *Jerry v. Townshend* (1856), 9 Md. 145, 159; *Baltimore City Pass. Rwy. Co. v. Tanner,* 90 Md. 315, 45 A. 188; *Berry Will Case,* 93 Md. 560, 579, 49 A. 401; *Owings v. Dayhoff,* 150 Md. 403, 151 A. 240; *Rickards v. State,* 129 Md. 184, 190, 98 A. 525; *Daugherty v. Robinson,* 143 Md. 259, 122 A. 124; *Gordon v. Opalecky,* 152 Md. 536, 137 A. 299; *Balto. & O. R. Co. v. Brooks,* 158 Md. 149, 148 A. 276; *Baltimore v. State,* 122 Md. 113, 103 A. 426.

In other words, while the better practice is to incorporate in a hypothetical question all the facts on which an expert witness is asked to give an opinion, yet the hearing or reading of the testimony is accepted as an imperfect substitute

for the formal hypothetical question in furnishing the data for inference by the expert witness. Furthermore, since the inference or conclusion rests upon certain premises of fact, these premises must be true; and, in order that premises considered may be known, and their truth or falsity be ascertained by the jury or the court, these premises must be expressly and particularly stated. For this reason the admissibility of a hypothetical question primarily depends upon whether it furnishes the tribunal with the means of knowing upon what premises of fact the conclusion is based. The problem is largely left to the sound discretion of the trial court, but clearly it is improper to admit an expert's inference or conclusion upon the reading or hearing either of all or of a specified part of the testimony in the case, if such whole or part of the testimony, so submitted as the premises for an inference or conclusion, is conflicting in the important assumptions of factual truth to be made. *Wigmore on Evidence* (2nd Ed.), sec. 681; 1 *Greenleaf on Evidence* (16th Ed.), secs. 441K, 441L.

The reason is that, when there is a conflict of testimony on material facts, no conclusion can be reached by the expert witness until he has first determined which of the facts in conflict are true, and, in forming his judgment on what should be the premises from which he draws his inference or conclusion, he must necessarily invade the province of the jury and pass on the credibility of witnesses and the weight of evidence. As was said in *Jerry v. Townshend,* 9 Md. 145: "It is clear that you. cannot ask a witness, an expert, his opinion, as to the state of a party's mind, upon the evidence submitted to the jury. To do so would be to transfer the functions of the jury to the witness, and would permit him to decide upon the very fact at issue, and thus to control the verdict of the jury. It is equally clear, on the other hand, that you may ask such a witness his opinion upon a state of facts, hypothetically put, based upon the evidence, and this is in fact the proper way to submit such questions to a witness." In *Woodbury v. Obear,* 7 Gray (Mass.), 467, a medical witness was asked whether, having heard all the

evidence, he was of opinion that the testator was of sound mind. The court held that the question was not proper in that form, stating: "This would be especially irregular where the evidence is conflicting, because it puts it in the power of the expert to give an opinion upon the credibility of the testimony and truth of the facts, which is purely a question for the jury, and then upon the value and efficacy of the facts and circumstances, in his opinion thus proved, upon the question of soundness of mind." *Connor v. O'Donnell,* 230 Mass. 39, 119 N. E. 446; *Burnside v. Everett,* 186 Mass. 4, 71 N. E. 82; *Damm v. State,* 128 Md. 665, 676, 97 A. 645; *Balto. & O. R. Co. v. Thompson,* 10 Md. 76, 83, 84; *Walker v. Rogers,* 24 Md. 237, 243, 244, 247; *Baltimore & L. Turnpike Co. v. Cassell,* 66 Md. 419, 7 A. 805; *Dexter v. Hall,* 15 Wall. 9, 21 L. Ed. 73.

Although a medical expert may base his opinion upon the facts testified to by another expert, the witness may not have submitted to him, as a part of the facts to be considered in the formation of his inference and conclusion, the opinion of such other expert on all or some of the facts to be considered by the witness from whom the answer is sought. To do so would destroy the premises of fact upon which an expert, by reason of his own peculiar technical skill and knowledge, is permitted to give in evidence his own inference and opinion. *Globe Indemnity Co. v. Reinhart,* 152 Md. 439, 137 A. 43; *McComas v. Wiley,* 134 Md. 572, 580, 108 A. 196; *Williams v. State,* 64 Md. 384, 394, 1 A. 887; *Kelly v. Kelly,* 103 Md. 548, 554, 63 A. 1082; *Coughlin v. Cuddy,* 128 Md. 76, 83, 96 A. 869; *Harris v. Hipsley,* 122 Md. 418, 433, 434, 89 A. 852; and see annotation in 82 A. L. R. 1460-1492.

It is by these rules of evidence that the propriety of rulings on the admission of testimony is to be determined, and these eight exceptions will be first considered.

Without excluding the previously expressed opinion of two lay witnesses, Dr. Joseph D. Stout, a medical expert, who had heard or had read to him all the prior testimony, was asked, during the taking of the evidence in chief of the

caveators, to assume the truth of all the testimony which he had heard, and to give his opinion as to whether the decedent was mentally incapable of making a valid deed or contract on February 8th, the day the purporting will was made. The caveatees excepted, and the admission of the opinion of the witness that the decedent was so incapable is the ruling presented for review by the first exception. Under similar conditions, with the addition that testimony upon which their conclusions were based did not exclude, but included, not only the opinions of the two lay witnesses, but also the opinion of each preceding medical expert, Dr. William T. Hammond and Dr. William N. Palmer, both medical experts, gave like answers, and the reception of this testimony constitutes the second and third exceptions. The fourth bill of exception arose during the course of the testimony of Dr. Harry M. Stein, another expert witness. Dr. Stein had visited the decedent on February 9th, the day after the execution of the assailed document, at the request of Dr. Merritt, the attending physician. After Dr. Stein had described the patient's physical and mental condition as found by him on this professional call, he, in response to a direct inquiry, testified that the decedent did not possess on February 8th the mental capacity to make a valid deed or contract. Dr. Stein was then withdrawn, and, after the three named experts, who had never seen the decedent, had testified and expressed a like conclusion, Dr. Stein was recalled, and, after proving that he had heard all the testimony taken to that point, had put to him this interrogatory: "From your own findings and assuming to be true the testimony that has been adduced, have you an opinion as to whether Mr. Reuben N. Greenhawk was competent to make a valid deed or contract on February 8th, 1932 ?" He stated that his opinion was that the decedent was not able. The admission of this answer is the ground of the fourth exception. The term "findings" is not accurate, because it included whatever the witness might have discovered in his examination, and, therefore, something material which he might not have disclosed in his testimony; but, confining the mean-

ing of the word to the prior narration by the witness of the condition of the decedent, there was nothing between the witness' former statement of mental incapacity and the putting of the new question that had been admitted in evidence, except the testimony of the three medical experts who had never seen the party. If the witness had been asked to combine what he had personally described in evidence as the condition of the decedent on the day after the signing of the document in question with the facts given in evidence by the preceding witnesses with respect to the condition of the decedent on the day of the signing and theretofore, and express an opinion on this whole testimony, there would have been no basis for an objection, provided the question propounded had excluded from the testimony to be weighed the preceding opinions of the lay and expert witnesses that had been given in evidence. The failure of the question to make this exclusion puts this fourth exception in the same class as the first three exceptions. Since all of these four bills of exceptions show the common error of including in the evidence submitted to the expert witnesses the opinion of both lay and expert witnesses on the identical inquiry of the decedent's mental capacity, there was error in permitting the testimony to be received in evidence. *Supra.*

The seventh, eighth, ninth, and tenth bills of exceptions arose on rulings of the trial court that admitted, after the close of the caveatees' testimony in chief, the opinion testimony of three of the medical experts who had testified for the caveators in chief. To understand these rulings it will be necessary to give a succinct statement of what had intervened in the form of testimony. The caveatees had offered testimony of the family physician, of the lawyer whom the decedent had summoned to his home to prepare the assailed will, of the lawyer's secretary, who was present at the home and drew the will, of expert and lay opinion evidence of the decedent's bodily sickness and infirmity and of his mental capacity at the time of the signing of the paper, and of witnesses familiar with the relation between his relatives and the decedent, whose son and wife had recently died,

leaving none but collateral relatives to take in the event of his intestacy. If the impressive testimony of these witnesses be true, their evidence would establish the complete testamentary capacity of the decedent at the time of his execution of the document in question. So, the testimony on the part of the caveatees was in diametrical conflict with that of the caveators with respect to mental capacity, and it was, consequently, impossible for all the testimony on this crucial fact to be true.

Under this irreconcilably contradictory state of the testimony with respect of the testamentary capacity of the decedent, Dr. Stein, who had seen the dead man, and Drs. Palmer and Hammond, who had not, were recalled and were severally asked if they each had heard all the testimony on the part of the caveators and caveatees, and, on their reply in the affirmative, had this question propounded to each: Having heard all the testimony and assuming the facts to be true, have you an opinion as to whether or not Reuben N. Greenhawk was or was not competent to make a valid deed or contract on February 8th, 1932? To this question every one of the three medical experts replied that he had an opinion on the assumption requested, and it was that the decedent was not competent. The admission of this testimony is the basis for the seventh, ninth, and tenth exceptions. The testimony so taken was not admissible. It was based upon an impossible assumption of the truth of all the testimony on the issue of mental capacity. The effect, however, of their answers was to allow the witnesses to reject all the testimony on the part of the caveatees tending to show mental competency at the time of signing, as untrue and unworthy of belief, which is the function and sole province of the jury; and after this arbitrary elimination of contradictory proof of the caveatees as untrue, when the question bound them to assume it as true, the three witnesses declared the decedent mentally incompetent to execute a valid deed or contract on the date of the signing of the document. In permitting these questions to be answered, it is manifest that the trial court vio-

lated the rules of evidence governing the admission of this class of testimony. *Supra*.

The eighth exception is confined to an objection to the introduction by Dr. Stein, in his explanation of his reasons for his opinion given in the preceding bill of exceptions, of a statement which Dr. Stein there testified the family physician had made to him in reference to the decedent's condition on February 9th. As thus limited, the objection was not well taken.

The contention is made by the caveators that there was no prejudicial error committed by the incorporation, in the hypothetical questions submitted to the experts, of the opinions of lay and technical experts in reference to the mental competency of the testator, because, after expression of their conclusions, their answers did not specifically state that they had considered these opinions in forming their conclusions on the subject-matter of the decedent's competency. The answer to this argument is that the questions propounded did embrace these lay and expert opinions on the question they were to answer. So, if these expressions of opinion were, in fact, excluded, on the initiative of each expert witness, and the hypothetical question submitted so mentally reformed, the witnesses should have disclosed that fact. The unknown mental processes of the witness cannot determine the effect of an answer to the question as propounded. There is no affirmative evidence that in making his inference any of the expert witnesses eliminated from the question asked the opinions of other witnesses, and, so, the court cannot assume the medical experts refused to consider opinions which were an integral part of the questions submitted. To indicate the danger involved in this particular contention, it may be added that, in the explanations of the answers which were made by the four experts mentioned, the court finds expressions which indicate that all the testimony submitted for an inference was taken into consideration.

The fifth and sixth bills of exceptions are with respect to the exclusion of evidence on the part of the caveatees which was offered to show that, notwithstanding her testimony when

on the stand for the caveators that she had never been paid for her services to the decedent and his wife, Mrs. Virgil Greenhawk, wife of a nephew of the decedent, had been paid her weekly wage by the wife of the decedent. There was no error in these rulings, as it was an offer to impeach the witness in a collateral and immaterial matter. The witness sought to be impeached had no claim on decedent's bounty, because she was not his kin, and her testimony on this point was irrelevant, since at most it could only tend to show an unpaid servant or a gratuitous servitor from August 1st, 1931, to the middle of the next December. *City Pass. Ry. Co. v. Tanner,* 90 Md. 315, 320, 45 A. 188.

The trial court correctly granted the prayers of the caveatees that there was no legally sufficient evidence to find for the caveators on the issues of fraud, duress, or undue influence in the procurement of the execution of the alleged will. Nor was there any legally sufficient evidence to find that the *factum* of the execution of the instrument had not been established, and there should have been a directed verdict for the caveatees on the second and third issues, which presented that question. It is well established that a party may sign by mark or by initials with the intention of subscribing the instrument as his will, and the signature will be a sufficient compliance with the statute, although he may be able to write. Article 93, section 332, of Code; 2 *Greenleaf on Evidence* (16th Ed.), sec. 674. In this particular instance, the party was ill in bed and afflicted with a cancer of the rectum. He sat up to sign his name, and, finding it painful to proceed, the attorney inquired if the decedent would like his secretary to finish signing the decedent's name. The decedent then asked, "Will it be all right?" and, when his attorney said it would, wrote his initials "R. N." and the secretary finished the name by writing "Greenhawk," and added "his mark," and the three subscribing witnesses, who, at the decedent's request, saw him sign the will in their presence, witnessed the will in the presence of the decedent and of one another. Nothing more was required, and the testimony on the trial of these issues was complete and not contradicted, so the trial

court was in error in not granting the caveatees' first prayer which directed a finding for the caveatees on the *factum* of the will.

The evidence is undisputed that the paper writing was prepared in accordance with the directions of the decedent, and that it was read, without deceit or fraud, to him before he signed and had the document executed, so there should have been a directed verdict for the caveatees on the issue of whether or not the decedent knew or understood the contents of the paper writing, unless his mental incapacity prevented him. The remaining two issues, therefore, depended upon whether or not the decedent possessed the necessary testamentary capacity at the time of the signing of the paper writing in controversy. The caveatees attempted to challenge the legal sufficiency of the testimony on these issues by their fourth and fifth prayers for a directed verdict against the caveators, but each of these prayers was rejected, and rightly, because the demurrer must go to the whole testimony, and, so, include the testimony introduced on behalf of the caveatees as well as of the caveators, and each of these two prayers had the vice of confining the demurrers to the testimony offered by the caveators. 2 *Poe, Pl. & Pr.,* sec. 295; *State v. Balto. & O. R. Co.,* 69 Md. 343, 14 A. 685, 688; *Penna. R. Co. v. Cecil,* 111 Md. 288, 73 A. 820; *Fidelity & Deposit Co. v. Panitz,* 142 Md. 300, 303, 120 A. 713.

Tht caveatees restrict their objections on brief and in argument to the first and ninth prayers of the caveators. The first prayer, it is urged, is in conflict with the granted sixth prayer of the caveatees. The first prayer is an approved form of stating the requisites of testamentary capacity at the time of the execution of the purporting will, and with it was granted the seventh prayer of the caveatees, which complemented the first prayer by instructing the jury that it was not a valid objection to a will that it prefers a friend over a relative if the maker possess testamentary capacity. *Stirling v. Stirling,* 64 Md. 148, 21 A. 273. Nor is the first prayer a conflicting instruction. The prayer defines testamentary capacity without reference to the burden of proof,

and the sixth prayer of the caveatees has for its subject-matter the correct statement of the burden of proof in the establishment of a want of such capacity. The two prayers are, therefore, supplementary and not contradictory.

The third issue is whether the paper writing was attested and subscribed in the presence and at the request of the said Reuben N. Greenhawk by two or three credible witnesses. This issue was as to the *factum* of the will and does not involve an inquiry into a mental condition, as is required in determining the possession of testamentary capacity. It was, therefore, error in the trial court to grant the caveators' ninth prayer to the effect that, if the jury should find the maker did not possess testamentary capacity, the verdict on this issue should be in the negative. The ruling confounded distinct issues, which concerned independent inquiries and required separate and distinct verdicts. See *Etchison v. Etchison,* 53 Md. 356; *Taylor v. Nuttle,* 62 Md. 342, 345; *Tatem v. Wright,* 139 Md. 20, 28, 114 A. 836; *Hamill v. Hamill,* 162 Md. 159, 168, 159 A. 247; *Ward v. Poor,* 94 Md. 133, 141, 50 A. 572.

For the errors found in the rulings of the trial court in the first, second, third, fourth, seventh, ninth, and tenth exceptions on the testimony and in refusing the caveatees' first prayer and in granting the caveators' ninth prayer, these rulings must be reversed, and a new trial must be awarded.

*Rulings reversed as above specified, and new trial awarded.*