## JOHN H. GRILL, EXECUTOR, *vs.* LILLIE R. O'DELL.

*Wills—Testamentary Capacity—Competency of Evidence—*
*Hypothetical Question to Expert—Evidence as to*
*Delusions—Instructions to the Jury—*
*Knowledge of Contents of Will.*

Upon the trial of issues under a caveat to a will, relating to the testamentary capacity of the testatrix and her knowledge of the contents of the will, when it has been shown that the money disposed of by the will had been surreptitiously taken by her from her husband during a long period of time, evidence is admissible to show that some years before the execution of the will, the testatrix had confessed to her husband

that she had taken and saved some of his money, and that her purpose in so doing was to provide for their daughter. And evidence is also admissible of her declarations, made to other persons, that she had accumulated the money for her daughter.

When a witness, who had transacted business for the testatrix, has testified that she generally acted upon his advice, and then proceeds to say that in regard to a certain matter she acted against his advice and as to that he "could not control her," there is no error in refusing to strike out the latter statement, since it added nothing to the effect of his other testimony, which had been given without objection.

A witness, who had given evidence as to the anger of the testatrix when she was informed as to the nature of her dower interest in the real estate owned by her deceased husband, said, in describing her conduct at the time, "she got wild." *Held,* that this phrase was not an opinion as to the sanity of the testatrix, and there was no error in refusing to strike it out.

A witness who had known the testatrix for many years, and had had business relations with her, testified that after the death of her husband, she got steadily weaker; that there was a failure in her memory; that she would make inconsistent statements, apparently forgetting what she had previously said; that two days before the execution of her will she insisted upon making a gift to a person who, she had repeatedly been informed, was dead. *Held,* that upon these facts, the witness is competent to give his opinion as to the mental capacity of the testatrix.

Upon the trial of such question as to the testamentary capacity, evidence is admissible to show that after the testatrix had executed the will, she did not remember that she had done so; and evidence is also admissible that in the month succeeding the signing of the will, the testatrix thought that someone wanted to kill her.

A sister of the testatrix, a frequent visitor at her house, may give her opinion as to the mental capacity of the testatrix at the time of the execution of the will, when the witness

shows that then and subsequently the testatrix had an unfounded fear of assassination; that her mind was not clear; that she was forgetful, and was afraid of being alone, and that from having been a neat person, she became filthy in her habits, and that she expected a visit of a brother who had been dead for eighteen years.

The physician who attended the testatrix during the last three or four years of her life testified that she suffered from Bright's disease, accompanied with severe attacks of heart trouble, asthma and dropsy; that she failed gradually both physically and mentally and her mind was at times very feeble. On cross-examination, he said that she might have been capable of making a will at times when he was not present. *Held,* that this evidence is sufficient to support the opinion of the witness that the executrix was not competent to make a will at the time of its execution.

Witnesses who had known the testatrix for many years and were intimately associated with her during the latter part of her life, and who testify as to facts concerning her mental condition, such as her failure of memory and hallucinations and other infirmities, may give their opinions as to her testamentary capacity at the time of the execution of the will.

The statement of a witness that one talked to the testatrix as one would to a child is not incompetent when taken in connection with facts showing her enfeebled cerebral condition.

An expert called upon to give his opinion as to a party's testamentary capacity, not upon the evidence in the case but upon an hypothetical statement, may testify before all the evidence of the caveator has been produced.

If a hypothetical question is proper upon the evidence in the case at the time it is propounded, an objection to it is properly overruled. If evidence subsequently adduced renders the question insufficient, a motion should be made to strike out the answer.

In this case, the evidence produced after a hypothetical question to a medical expert was asked and answered did not modify the facts stated therein, and the question as asked was a fair summary of the evidence.

A hypothetical question stating that the testatrix thought some-one had a design on her life need not expressly state that this impression was false when it appears from the rest of the question that this was one of several delusions.

The fact that the testatrix was the victim of delusions may properly form a part of a hypothetical question as to her testamentary capacity in connection with other evidence, although it be not shown that the will was made in consequence of the delusions.

A hypothetical question as to testamentary capacity need not set forth the contents of the will.

When the testimony of a witness does not embrace an expression of opinion as to the mental capacity of the testatrix, but relates to certain facts tending to show infirmities of mind, a motion to exclude all the testimony is properly refused.

A person who had two interviews with the testatrix about ten months before the execution of her will is not competent to give his opinion as to her testamentary capacity.

A witness who has testified that the testatrix was mentally capable may have his testimony impeached by showing that at a certain time he had expressed the opinion that she was in her dotage.

When one of the issues under a caveat is whether the testatrix knew the contents of the will, it is not error to instruct the jury that it was essential that she should "know and understand" such contents.

When it is not contended that the will was the product of a delusion, but the evidence that the testatrix suffered from delusions was offered to show her general mental condition under the issue of testamentary capacity, a prayer offered by the caveatee is erroneous which instructs the jury that if the delusions were temporary and occasional, then the presumption of law is that when the will was made the mind of the testatrix was free from that influence.

*Held,* further, that in such case, a prayer is erroneous which instructs the jury that if they should find the existence of a delusion in the mind of the testatrix as to a person or thing this would not in itself invalidate the will, unless it was the

product of such delusion, and the burden of proof is on the caveator to satisfy the jury that the will was so produced.

Evidence as to the mental capacity of the testator should be limited to his condition at the time of the execution of the will, but in this case, where a witness was allowed to give his opinion that the testatrix was incapable two days before she executed the will, such technical error is immaterial, since she had then given instructions for the drafting of the will, and there was ample evidence as to her capacity at the time of its execution, and the instructions to the jury required them to find that she was mentally incompetent when the will was made.

*Decided June 23rd, 1910.*

Appeal from the Circuit Court for Harford County (VAN BIBBER, J.).

The case was argued before BOYD, C. J., PEARCE, BURKE, THOMAS and URNER, JJ.

*Thomas G. Hayes* and *Osborne I. Yellott* (with whom was *Thomas H. Robinson* on the brief), for the appellant.

*Stevenson A. Williams* and *Z Howard Isaac,* for the appellee.

URNER, J., delivered the opinion of the Court.

In the record upon this appeal there are seventy-one bills of exceptions. They embody the rulings of the Court below in the trial of issues relating to the validity of a will. As the numerous questions presented must all be reviewed it will be necessary to state and discuss the individual exceptions as concisely as possible.

The will in controversy is that of Annie E. Ruby, late of Baltimore County. It was executed on July 27th, 1908, and the testatrix died on February 4th, 1909, at the age of about

seventy-six years.　She was the widow of William H. Ruby who died in 1905.　There was but one child of the testatrix living at the execution of the will.　This was a daughter, who was married to George O'Dell, prior to her father's death.　After her marriage she resided with her husband at the home of her parents in compliance with their request.

The estate passing under the will consists of Savings Bank deposits amounting to about $14,500.　This fund had been accumulated by the testatrix with great patience and secrecy during a period of about forty years.　The deposits were made with money surreptitiously taken from her husband's pockets or appropriated from allowances made by him for the household expenses.　They were designed as a future provision for the daughter; but she was kept in ignorance of their existence.

The will was prepared sometime in June, 1908, by John H. Grill, an attorney at law, who is named as the executor and who is the caveatee and appellant in the present record.　After certain bequests in the will in favor of other persons the residuary estate is bequeathed to Mr. Grill in trust for Mrs. O'Dell during life, her interest to become absolute if she should survive her husband, otherwise to go in remainder to the heirs and personal representatives of the deceased husband of the testatrix.

A caveat was filed by Mrs. O'Dell to the will after it had been probated and letters testamentary had been issued, and this Court has heretofore had occasion to consider an application for the revocation of the letters pending the litigation over the will.　*Grill* v. *O'Dell*, 111 Md. 64.

There were four issues formulated and transmitted to the Circuit Court for trial.　Two of these submitted the questions as to whether the will had been executed in accordance with the legal formalities and whether it had been procured by undue influence.　The verdict upon these two issues was in favor of the defendant under the instructions of the Court.　The two remaining issues, relating to the question of

testamentary capacity, and knowledge by the testatrix of the contents of the will, were determined by the jury in favor of the caveator.

Seventy of the exceptions taken by the caveatee in the course of the trial deal with rulings as to the admissibility of evidence, and one is concerned with the action of the Court below upon the prayers.

The first and second exceptions were to the allowance of questions propounded to William M. Isaac and which elicited from him the information that fifteen or twenty ago Mrs. Ruby in a conversation with her husband admitted having taken and saved some of his money but stated that if she had not done so, their daughter would be a beggar. It was objected that these declarations were too remote from the execution of the will to be relevant. It has already been noted that the estate of the testatrix was the result of a process of hoarding which began many years before her death and before the time of the declarations referred to by the witness, and the evidence thus offered to show that the purpose of the testatrix in accumulating the money was to provide for her daughter was clearly competent.

In the third bill of exceptions it appears that the same witness, after testifying that he had known Mrs. Ruby for about forty years, that he had, at her request, administered upon her husband's estate and that in those days she generally acted upon his advice, proceeded to say that he "could not control her when she went to sell the property." A motion by the caveatee to strike out the expression quoted was overruled by the Court. It developed later that the sale to which the witness alluded occurred in 1907 and embraced certain real estate of which Mr. Ruby died seized and in which the testatrix had a dower interest. She was urged by the witness not to sell the properties for less than certain prices, but she sold them for much smaller amounts, giving as her only reason that she needed the money and that she would starve. The statement excepted to added nothing to

the effect of the facts, to which the witness testified without objection, and which showed that in reference to this transaction the testatrix, contrary to her previous habit, was not governed by his advise, and there was no error in overruling the .motion for its exclusion.

The fourth and fifth exceptions refer to the refusal to strike out from an answer of the same witness the expression "She got wild," which was used in describing the conduct and speech of the testatrix when the nature of her dower interest in the real estate left by her husband was explained to her and when she learned that her interest was not absolute, as she supposed, but only for life.  It was in this conversation that the witness said: "She got wild and pretty profane, cursing people who made such laws to cheat women out of their rights."  · It is apparent from the context that the portion of this sentence to which exception is taken referred simply to the violence of the profanity and abuse in which the testatrix indulged and did not in itself amount to the expression of an opinion as to her sanity.  The effect of the testimony would be practically the same if the words objected to were eliminated.  We see no error in this ruling.

By the sixth and twenty-fifth exceptions the competency of the opinion expressed by Mr. Isaac as to the testamentary incapacity of Mrs. Ruby is questioned first upon the ground that it is not sufficiently supported, and secondly because it was not directed to the precise date of the will.· In addition to the facts to which we have already referred this witness proved that the testatrix was in ill health when her husband died and afterwards grew weaker all the time and there was a failure in her memory, that she would "make different statements about the same thing, apparently forgetting what she had said before;" that on July 5th, 1908, two days before the execution of the will, he visited the testatrix, who was then confined to bed, and she proposed to give him a bookcase, and upon his declining it she said she would give it to his son Randolph, that he reminded her repeatedly that

Randolph was dead, but she persisted in her proposal to make the present to the deceased son.

It is apparent that this witness, in the course of his long acquaintance with the testatrix and his business relations with her in connection with the settlement of her husband's estate, had exceptional opportunities for observing and knowing her mental condition. The facts stated by the witness as the basis of his opinion as to the incapacity of the testatrix cannot be held to be legally insufficient to support that conclusion in the light of the previous decisions of this Court upon the subject of non-expert testimony in cases of this character. *Brooke* v. *Townsend*, 7 Gill, 28; *Crockett* v. *Davis*, 81 Md. 151; *Waters* v. *Waters*, 35 Md. 542; *Brashears* v. *Orme*, 93 Md. 450; *Watts* v. *State*, 99 Md. 36; *Berry Will Case*, 93 Md. 580; *Berry* v. *Safe Deposit Co.*, 96 Md. 45. It is well settled that if a witness has the means of knowing a testator's mental condition, "then after disclosing those means, so as to show both that he possesses them and that they are adequate, he may state the result." The *Berry Will Case*, 93 Md., *supra.*

The second objection to this testimony is more serious, because being directed to the proof of *incapacity*, it is in apparent conflict with the well-settled rule that the opinion must be confined to the mental condition of the testatrix at the time of the execution of the will. *Gesell* v. *Baugher*, 100 Md. 682; *Brashears* v. *Orme*, 93 Md. 448; *Jones* v. *Collins*, 94 Md. 410; *Kelly* v. *Kelly*, 103 Md. 553; *Robinson* v. *Jones*, 105 Md. 69; *Davis* v. *Calvert*, 5 G. & J. 300.

It appears from the testimony of the witness that his last interview with the testatrix occurred on the afternoon of Sunday, July 15th, 1908, and his opinion was asked and given as to her mental capacity at or about that date. The will was executed two days later and the question and opinion should undoubtedly have been directed to that time. Whether this departure from the general rule as to this particular item of proof should, under all the circumstances of

the case, justify a reversal and remanding for retrial is a question we will consider at the conclusion of the opinion.

The seventh exception was taken to the admission of a statement of Mrs. Catherine Fairbanks, a sister of the testatrix, that subsequently to 1888, when she first learned of her sister's savings account, by seeing the deposit book, she would sometimes tease the testatrix about it and threaten in a jocular way to tell on her, to which she would reply that she and the witness were the only ones who knew anything about the account and she wished it kept secret; and the eighth exception related to the further statement of the same witness that on various occasions after her discovery of the bank account she would refer to it when her sister would speak of her fear of going to the poorhouse, and the latter would say: "Well, I am saving that for a purpose, I am saving that for my child." This testimony was admissible as having a direct tendency to show the attitude of the testatrix towards her estate and the object for which it was being accumulated.

It was proven by the same witness that in July and August, 1908, after the execution of the will Mrs. Ruby said there was no need of her making a will and that if she needed one, John Grill would make her will. This was the subject of the ninth exception. As indicating that the testatrix, after the date of her will, was not conscious that she had already executed one, this evidence was clearly admissible. The fact that the testimony related to a period subsequent to the execution of the will does not render it incompetent. It has been held that in order to reflect upon the condition of a testator at the date of his will, evidence of his bodily and mental condition both before and afterwards may be produced, subject to the qualification that an opinion as to incapacity must be confined to the time of the testamentary act. *Gesell* v. *Baugher; Brashears* v. *Orme; Jones* v. *Collins, supra.*

There is no question for review in the tenth exception as the testimony therein objected to was stricken out by consent.

In the eleventh exception an unsuccessful effort was made to exclude proof by Mrs. Fairbanks that in August, 1908, the testatrix thought someone had a design on her and wanted to kill her, and the witness stayed with her all night on several occasions to pacify her and try to relieve her of that feeling. This testimony was competent under the rule stated in connection with the ninth exception.

The twelfth and twenty-fourth exceptions deal with the opinion of Mrs. Fairbanks that the testatrix was not capable of executing a valid deed or contract during either June or July, 1908. It is objected that the facts testified to by the witness were not adequate to support the opinion expressed, and that it was not directed to the date of the will. The opportunities for observation enjoyed by this witness as the sister and frequent visitor of the testatrix were ample. In fact the learned counsel for the caveatee in their brief suggest that this witness was within the class of those entitled to express an opinion without first stating the facts upon which it is based. But the witness was asked to give the reasons for her opinion and it is insisted that they are inconclusive and insufficient and render the testimony incompetent. We are unable to sustain this contention. It was testified by the witness, in addition to the facts already mentioned in connection with other exceptions to her testimony, that Mrs. Ruby's mind was not clear during the last year of her life; she changed very much during that time; she did not seem to be able to remember; she would mention something and talk about it for a little while and then she would forget that anything had been said about it; would become drowsy during a conversation and fall asleep; was apprehensive all the time that someone would get into the house; seemed to have a dread or fear; wanted somebody with her; was afraid to be in the room alone; from being a neat and careful person

she became the last year or more of her life very slovenly and filthy in her habits (the details being stated and being conclusive on the point though not necessary to be repeated here); in August, 1908, she was looking for a brother to visit her who had been dead ten years; she had frequently declared that everything she had should go to her daughter, whereas the will was not consistent with that purpose.

The foundation thus laid by the witness was, in our judgment, legally sufficient to entitle her to give to the jury her conclusion as to the testamentary capacity of the testatrix.

In reference to the objection that the opinion did not refer to the date of the will it is only necessary to call attention to the phraseology of the question by which the opinion was evoked. It inquired whether Mrs. Ruby had the requisite capacity during June or July, 1908. The answer in effect asserted that she was not capable during those months. It amounted to a distinct denial of testamentary capacity during the whole of a period which included the date of the will. This is all that the law required. In *Brooke* v. *Townsend, supra,* it was held that a witness who had known the testator for twenty-five years should have been permitted to give his opinion of the testator's mental condition during that entire period; and in the cases where opinions have been disallowed because not directed to the time of the execution of the will, the questions either specified periods which did not include the date of the instrument, or were wholly indefinite as to time. *Brashears* v. *Orme,* and other cases, *supra.* The same objection was urged in subsequent exceptions as to the opinions of other witnesses, but in view of its disposition in the present connection it will not need to be further considered.

The thirteenth to the seventeenth inclusive and the twenty-third exceptions relate to the opinion of Dr. Jarrett, the attending physician of the testatrix, as to her mental capacity. The objection is that his testimony was too uncertain and vague to support his statement that he did not think she was

capable during July and August of executing a valid deed or contract.

Dr. Jarrett proved that he attended Mrs. Ruby once or twice a week for the last three or four years of her life. She suffered with Bright's disease which was accompanied by heart trouble, severe attacks of asthma and dropsy. Her condition, physically and mentally, was gradually failing. In the early part of 1908 her mind at times was very feeble; she was forgetful; and on several occasions while she would be talking she would fall asleep. In June and July "it was very evident that she was failing physically and mentally right along." During that period she refused almost daily to take medicine. On cross-examination the witness said that Mrs. Ruby might have been more herself at times when he was not there, and that if she was in such condition she might have been capable. In answer to a question as to whether he could say positively that she was not able during June or July to execute a valid deed or contract, he said that he had stated sometime before that she was a woman of such peculiar temperament that anything she did not agree to would disturb her and make her incompetent to do anything of that sort, but he did not know whether anything of that description occurred in June or July. He adhered, however, to his statement that he did not think she could have made a valid deed or contract during the period in question.

In *Gesell* v. *Baugher, supra,* the opinion of a physician as to the incapacity of the testator was held to be incompetent because on cross-examination the witness stated that he was unable to say whether or not at the time of the execution of the will there in question the testator had the necessary capacity. In that case the cross-examination completely neutralized the effect of the witness' opinion as expressed in chief; but in the present case the probative force of the testimony excepted to, while it may have been weakened, was not destroyed by the cross-examination. Considering the

whole of the testimony of the witness we do not feel warranted in holding that his opinion should have been excluded.

The eighteenth to twenty-first exceptions inclusive, the twenty-sixth to thirty-second inclusive and the thirty-fourth, thirty-sixth and thirty-seventh present the objection of the caveatee to the opinions of Mrs. Racer, Mr. O'Dell, Mrs. Bishop and Miss Thayer as to the incapacity of the testatrix at the time of the execution of her will.

Mrs. Racer had been acquainted with Mrs. Ruby for twenty-eight years, had nursed her several months in her last illness and had seen her frequently during the period under investigation. Mr. O'Dell was the son-in-law of the testatrix and lived in the same house with her for a number of years prior to her death; while Mrs. Bishop and Miss Thayer knew the testatrix for many years and visited her frequently during the latter part of her life. Each of these witnesses had intimate associations with Mrs. Ruby and had the most advantageous means of knowing her mental condition. The facts to which they severally testified were similar in general effect to those narrated by Mrs. Fairbanks, and upon the grounds assigned for the admission of her opinion we think their conclusions on the same subject were competent evidence.

It appears from the thirty-third and thirty-fifth exceptions that objection was made to the testimony of a witness, Mr. Nimmo, to the effect that his wife would talk to Mrs. Ruby as she would to a child. In the same connection, and apparently by way of explanation, the witness said that Mrs. Ruby would talk sometimes and drop off to sleep; that his wife would be talking to her and she would go off on something entirely foreign to what was being said; that her mind didn't concentrate on what his wife was saying to her; it was just a broken conversation and a little napping; she seemed to be able to hold in her mind only two or three things and she would repeat these time and time again.

In *Waters* v. *Waters, supra,* it was held inadmissible for a witness to testify that the deceased was *treated* by his wife as a parent would a child, because this expression conveyed no distinct or definite idea of the witness' meaning; and in the *Berry Will Case,* 93 Md., *supra,* a description of the testator merely as being "childish in his manner," without explanation, was ruled to be improper. The reasons for the exclusion of such expressions in the cases cited do not exist in the present instance where the witness has not only used a much less general term than those employed in the former cases, but has fully indicated the particular necessity for talking to the testatrix in the manner stated. In any event this was merely a descriptive phrase uttered by the witness in connection with his other competent testimony pointing to the same conclusion, and the ruling permitting it to stand should not be treated as reversible even if it were considered erroneous.

During the course of the testimony of Mrs. O'Dell, the caveator, her examination in chief was allowed to be suspended in order that Dr. Edward N. Brush might be called to the stand. This forms the subject of the thirty-eighth bill of exceptions. It is conceded that a matter of this kind is ordinarily in the discretion of the trial Court, but the action of the Court is complained of in this instance because the purpose of the withdrawal of the caveator as a witness was to permit Dr. Brush and other experts to give their opinions as to the incapacity of the testatrix on a hypothetical question, and this, therefore, could not include the facts to which the caveator might testify. The experts were not asked to testify upon the evidence in the case, but upon an hypothesis of facts which had to depend for its sufficiency upon the statements which it contained, and as the substitution of a witness could not well affect such a question we see nothing in the present situation to prevent the exercise of the trial Court's discretion in this regard.

The thirty-ninth to the fifty-second exceptions inclusive are concerned with the hypothetical question propounded to Doctors Brush, Stuart and Van Bibber as experts and upon which they testified that in June and July, 1908, Mrs. Ruby was affected with senile dementia and was incapable of executing a valid deed or contract.

It has been earnestly and ably argued by the learned counsel for the caveatee that this hypothetical question is defective because of omissions of material facts and is misleading because of improper coloring given to some of its statements. Especial objection is urged against the question because it does not include certain features of the testimony given by the caveator after the question had been formulated, submitted and answered. But as this later testimony had not been offered when the exception to the hypothetical statement was taken, and as·no question was raised in that connection after the facts whose omission is now complained of were brought to light, it does not appear that the Court below has ever acted upon the point now presented. If the hypothetical question was proper under the evidence before the jury at the time it was propounded, then it was not error to overrule the objection interposed at that juncture. If the caveatee had desired to challenge the sufficiency of the question in view of subsequent evidence adduced by the caveator, there should have been an appropriate motion to that end, and a denial of such motion would have furnished the basis for an exception which this Court might consider. But we are unable to reverse a ruling that has neither been made nor invoked.

It may be proper to observe, however, that if the newly proven facts had been incorporated in the hypothesis submitted to the experts, its effect, in our judgment, would not have been materially modified.

Hypothetical questions are not required to include all the facts in evidence; and when they are challenged for any supposed defects, the sole inquiry to which the mind of the Court

is directed is whether they contain a fair presentation of the case as proven. *Berry Will Case,* 93 Md. 569; *Williams* v. *State,* 64 Md. 384.

The question now under review seems to us to be reasonably conservative and candid in its description of the situation and environment of the testatrix and in its presentation of the pertinent facts of her personal history, of the progress of the disease with which she was afflicted, of the changes in her habits and disposition as she approached the testamentary period, of her unaccustomed use of profane and vulgar language, of her relations with her daughter and son-in-law, including an account of a quarrel between the latter and herself, of the failure of memory, drownsiness, vacillation of mind, delusions and hallucinations to which the witnesses had testified, and numerous other features of the evidence.

It is contended that this statement of facts is not legally sufficient to support a rational inference of incapacity; but to this contention we cannot assent. We have already held that the evidence referred to in the question was an adequate foundation for an opinion by non-expert witnesses as to Mrs. Ruby's mental condition, and we see no reason to hold that the same evidence does not furnish a proper basis for the opinions of the alienists.

There were specific objections urged to various details of the hypothetical question. One criticism is that it contained a statement that the testatrix "thought someone had a design on her" and no explanation was given as to the nature of the design and as to its truth or falsity. This expression was used in connection with a recital of the fact that during 1907 and the early part of 1908 Mrs. Ruby "had a great dread of the house being robbed and that someone would break in and do her bodily harm, and on occasions in May and June, 1908, she imagined that she saw the flash of a pistol fired through her window and saw the ball fall on the floor, and could not be persuaded of her error." In the light

of this context we do not regard the criticism mentioned as being well founded.

It is urged also that delusions of this nature would not invalidate the will, there being nothing to show that the will was produced by them, and *Gesell* v. *Baugher,* 100 Md. 685; *Jones* v. *Collins,* 94 Md. 414; *Johnson* v. *Johnson,* 105 Md. 85 and other cases are cited in support of this proposition. In each of these cases the principle referred to was stated in discussions as to the legal sufficiency of all the evidence to warrant the submission of the issue to the jury or to uphold a finding as to the invalidity of the testamentary act under investigation. In none of them were the elements of a hypothetical question being considered in such a connection, and they do not hold that such a question is improper merely because it mentions the delusions of the testator as reflecting upon the general state of his mind. The inquiry here is not whether the will in controversy was the product of the delusions referred to, but whether they ought to have been eliminated from the hypothetical statement. We think it was permissible and proper to include them as tending to throw some light upon the question of the testatrix's mental condition.

Another objection is that the question did not include certain statements which it is claimed Dr. Jarrett, the attending physician, made on cross-examination, to the effect that Mrs. Ruby had lucid intervals and could make a valid deed or contract unless disturbed by something to which she did not agree. We have referred in the opinion to this portion of Dr. Jarrett's cross-examination. It should not, we think, be given the construction suggested. The doctor merely conjectured that she might have been "more herself" at times when he was not there. He did not testify explicitly that if she was not disturbed she could make a valid will, and he declared on cross-examination, as well as in chief, his believe as to her incapacity. If the net result of this testimony had been set forth in the hypothetical question we do

not see that it would have been made more favorable to the theory of testamentary capacity than it was as propounded, and we, therefore, do not consider it defective because of this omission.

It is objected also that the statement in the question as to the kind and patient treatment of the testatrix by her daughter and son-in-law are based upon the inference of witnesses and not upon facts duly proven; that the expression in the question that Mrs. Ruby "drew a knife" on her son-in-law on the occasion of the quarrel to which allusion has been made is not in accordance with the evidence which showed that she "jabbed" or "cut" at him with the knife; that the question does not request the experts to assume the facts stated to be true; and that reference is made to "the will in controversy" without any statement of its contents.

These objections are all untenable. The characterization of the conduct of the caveator and her husband towards her mother is founded upon actual proof and not upon inference. We see no material distinction, for the purposes of the hypothetical question, between *drawing* the knife and the movement described by the witness. The question was not predicated upon evidence heard by the experts, as in *Negro Jerry v. Townshend,* 9 Md. 158, but upon an hypothesis of facts assumed and submitted as the basis of their opinion. The "will in controversy" was referred to in the question as having been executed on July 7th, 1908, and as having been drawn by the caveatee. While its provisions are not stated, and while the previous declarations of the testatrix that her daughter should have all she possessed were mentioned, there is no intimation in the question that the will was in conflict with that expressed intention. The failure to state the contents of the will could not, therefore, have been prejudicial to the caveatee.

The fifty-third exception was taken to the refusal to strike out the whole of the testimony of Mrs. O'Dell, the caveator, as being legally insufficient to show mental incapacity on the

part of the testatrix on July 7th, 1908. Mrs. O'Dell's opinion on this subject was neither asked nor given. She testified, however, to various facts tending to show that her mother was mentally infirm, and the motion to exclude her testimony as a whole could not properly have been granted. *Gesell* v. *Baugher,* 100 Md. 682.

In August and September, 1907, Mrs. Ruby sold part of the real estate left by her husband and in that connection had two interviews with each of the two gentlemen who were interested in the transaction. They were produced as witnesses for the caveatee and while they were permitted to testify that the testatrix was capable at the time of their observation, the Court declined, on objection of the caveator, to allow them to express an opinion as to her capacity in the following July. This was the subject of the fifty-fourth and fifty-fifth exceptions. There was no error in this ruling, as the isolated interviews in the summer and fall of 1907 could not be held to be a sufficient basis for an opinion as to the mental condition ten months later of one who is shown to have been suffering with a progressive disease and a gradual weakening of body and mind.

The fifty-sixth exception related to the action of the Court in disallowing a question propounded on re-direct examination to one of the witnesses for the caveatee as to the number of times he had seen Mrs. Ruby on her porch, the object being, as stated by counsel, to refresh the memory of the witness by reference to the testimony of the caveator as to when her mother was able to be out; but as the witness had stated in chief that he saw the testatrix frequently when she was able to be on the front porch, and as the occasions when she could be thus seen were otherwise shown, we can see no prejudice to the caveatee in this ruling even if it were erroneous.

The purpose of the testimony objected to in the fifty-seventh and fifty-eighth exceptions was to lay a foundation to impeach a witness who had testified that Mrs. Ruby was

mentally capable by showing that the witness in a conversation with a person named at a time and place indicated had characterized the testatrix as being in her "dotage." This evidence was unobjectionable.

By the fifty-ninth to the sixty-second exceptions inclusive objections were made to interrogatories propounded on cross-examination to Mrs. Jeannette F. Green, a witness for the caveatee, relating to her observations of the testatrix in January, 1909, the month before her death. The witness had testified in chief as to Mrs. Ruby's capacity during the period subsequent to the execution of the will, and the cross-examination was pertinent to that inquiry.

The sixty-third, sixty-seventh, sixty-eighth and sixty-ninth exceptions involved certain impeaching testimony in rebuttal, the foundation for which had been properly laid; the sixty-fourth related to an explanation as to the source of information contained in a letter from the witness to the caveatee which had been offered in evidence by the latter; the sixty-fifth dealt with testimony as to the real character of property which the caveatee testified that the testatrix had said was a wilderness when it was proposed to her as a security for a loan; the sixty-sixth was taken to testimony of the caveator contradicting a statement attributed to her by the caveatee to the effect that her mother was of sound mind when the will was executed; and in the seventieth objection was made to a contradiction of testimony of the caveatee as to a matter of minor importance but not wholly irrelevant. In none of the rulings embraced in these various exceptions have we discovered any error.

The seventy-first and final exception presents for review the action of the Court below on the prayers. There were five offered by the plaintiff (caveator) of which four were granted; and there were eleven submitted by the defendant (caveatee) of which four were refused. The objections, both general and special, to the plaintiff's granted prayers were predicated upon the contention that there was no leg-

ally sufficient evidence that the testatrix was incapable of executing a valid deed or contract or that she did not have knowledge or understanding of the contents of the will, these being the questions involved in the only issues left to the jury. It is apparent from our discussion of the testimony disposing of the preceding exceptions that the defendant's objections, on the grounds stated, to the prayers granted on the application of the plaintiff cannot be sustained. The general effect of these prayers is to define the degree of understanding requisite for the execution of a valid will, to permit the consideration of the evidence of the testatrix's mental condition before and after the testamentary act as reflecting upon her ability when it occurred, to require the jury's determination of the validity of the will to be governed by their conclusion as to the capacity of the testatrix at the time of its execution, and, if they should believe her to have been then incapable, to direct a verdict for the plaintiff on each of the open issues.

Independently of the fundamental objection that they were not supported by legally sufficient evidence, no criticism has been made of any of the plaintiff's granted prayers except the fifth which deals with the second issue relating to knowledge by the testatrix of the contents of the will, and as to this it is pointed out that the word "understand" is added to the term "know" which is employed exclusively in the issue as propounded. The effect of the prayer was not to enlarge the issue, even if the addition of such a synonym could in any event produce such a result, but was merely to instruct the jury that "it is essential to the validity of every will that the testatrix should know and understand" its contents, and that if they found her to have been incapable of executing a valid deed or contract they should find for the plaintiff on the issue in question. We see no valid objection to this instruction.

Of the rejected prayers of the defendant two proposed to withdraw from the jury the issues relating to testamentary

capacity and knowledge of the contents of the will, and they were properly refused.

By another prayer the jury was sought to be instructed that if the testatrix had delusions or hallucinations of the kind mentioned by the witnesses for the plaintiff, and that during their continuance they rendered her mind unsound, yet if the jury should belive that such delusions or hallucinations were temporary and occasional and not permanent and continuous, then the presumption of law is that when the will was made the mind of the testatrix was free from their influence.

It was not pretended that the will in controversy was the product of any of the delusions mentioned by the witnesses, and the evidence offered on that subject was designed and used simply for the purpose of reflecting upon the general question of mental capacity. The prayer was, therefore, not directed to the real issue in the case and was objectionable as tending to confuse that issue. It is not necessary to determine whether it was otherwise free from objection.

The remaining prayer of the defendant which the Court below declined to grant was to the effect that if the jury should find the existence of a delusion or hallucination in the mind of the testatrix as to a person or thing, this would not in itself invalidate the will unless it was the product of such delusion or hallucination, and the burden of proof is on the plaintiff to satisfy the jury that the will was so produced. This prayer, if granted, would have imposed upon the plain-. tiff the necessity of convincing the jury that the will was the result of a delusion or hallucination, and not merely of a general want of testamentary capacity, and it was, therefore, properly refused.

We have now concluded our examination of the numerous questions presented in this voluminous record, and in all the seventy-one bills of exceptions we have found but one ruling which we feel warranted, under all the circumstances of the case, in holding to be erroneous. This was the admission of

the opinion of Mr. Isaac as to the mental incapacity of the testatrix two days before the execution of her will. The question as to whether, because of this ruling, the case should be remanded for a new trial, has been reserved and will now be determined. It is apparent that the error is more technical than substantial. The opinion declared the testatrix incapable on a date falling between her interview directing the drafting of the will and the day of its actual execution. It was confined to the period during which the testamentary act was in preparation though not to the precise time it was consummated. In view of this and all the other circumstances of the case and of the fact that the instructions to the jury, as we have seen, limited their determination as to mental capacity to the time of the execution of the will, it would be unreasonable to hold that the ruling in question involved an error sufficiently serious to require a reversal. Under the conditions presented by the record we are convinced that the ends of justice do not require, but forbid, that we should reach a different conclusion and thereby incur the necessity of subjecting the parties to further litigation and expense by remanding the case for retrial.

The rulings below will, therefore, be affirmed.

*Rulings affirmed with costs to the appellee.*