# BENSON C. HUTCHINS

*vs.*

# THOMAS L. HUTCHINS AND J. BRISCOE BUNT-ING, EXECUTORS OF ISAAC H. HUTCHINS, DECEASED.

*Testamentary Capacity—Undue Influence—Evidence—Declarations by Testator—Expert Witnesses.*

On an issue as to undue influence and mental incapacity in connection with the making of a will, the caveator, a son of testator, was entitled to testify as to declarations by the latter as to what part of his property he intended to give the caveator, he having the right to show, if he could, that the terms of the will were contrary to the settled convictions of testator as to a just disposition of his estate. p. 403

While the issue as to testator's mental capacity is concerned exclusively with his capacity at the time of the testamentary act, evidence of his prior and subsequent conduct, including business transactions in which he participated, is admissible as reflecting on his mental capacity at that time. p. 404

When a qualified witness is asked for his opinion of testator's mental condition, for the purpose of proving incapacity rather than capacity, the interrogatory must be specifically directed to the time of the testamentary act. p. 404

On an issue as to undue influence and testator's mental capacity at the time of executing the will, evidence as to his physical condition for over a year before the time of executing the will was admissible. p. 405

Testimony on behalf of the caveatees, that the portion of land allotted by the will to the caveator, one of testator's sons, was more valuable than that allotted to another son, was admissible as tending to refute the caveator's contention that the division made by the will was unjust to him and was procured by undue influence. **p. 405**

Evidence as to a conversation with testator in which he spoke of his relations with the caveator as affected by the division which he had made of his property, and incorporated in his will, was properly admitted.    p. 405

Hypothetical questions need not include all the facts in evidence, it being sufficient that they contain a fair presentation of the case as proven.    p. 405

*Decided December 10th, 1919.*

Appeal from the Circuit Court for Calvert County (CAMALIER and BEALL, JJ.).

The cause was argued before BOYD, C. J., BURKE, THOMAS, URNER, STOCKBRIDGE and ADKINS, JJ.

*John B. Gray, Jr.,* and *Isaac Lobe Straus,* with whom were *John B. Gray* and *J. Frank Parran* on the brief, for the appellant.

*Benjamin Hance* and *J. Briscoe Bunting,* for the appellees.

URNER, J., delivered the opinion of the Court.

The will of Isaac H. Hutchins, of Calvert County, which was executed February 9, 1907, devised one of his farms to his sons, Ernest S. Hutchins and Benson C. Hutchins, "with the desire that they hold the same in common and work and use the same as they are now working it, until one of them shall become able and willing to purchase the interest of the other therein, or so long as they shall work the same amicably"; and they were directed to divide the property, or have it divided, between them in the event of any disagreement. By a codicil dated January 24, 1917, the testator himself

divided the farm between the two sons, in accordance with a line of division therein described, devising to Ernest the part of the farm lying north of the line thus indicated, and to Benson the southern portion. The testator died in June, 1918. The division of the farm effected by the codicil is considered by Benson Hutchins to be unequal and prejudicial to the interests which he would have taken under the will if it had not been modified, and by his pending caveat to the codicil he charges that it was procured by undue influence, and that his father had not the requisite mental capacity at the time of its execution. Issues based on these allegations were tried in the Circuit Court for Calvert County. The trial resulted in a verdict sustaining the validity of the will on both issues. The appeal is from rulings on the admissibility of evidence and instructions to the jury.

The first of the twenty-four exceptions in the record was taken to the refusal of the trial court to permit the caveator to be asked in chief whether he had any conversation with his father as to what division of the farm he was going to make and what part he intended to give the witness. This was a proper question to be asked and answered. It was evidently directed to the proof of declarations by the testator prior to the execution of the codicil and inconsistent with its provisions. The caveator was entitled to prove, if he could, as reflecting upon the question of undue influence or mental incapacity, that the terms of the codicil were contrary to the settled convictions of the testator as to a just disposition of his estate. *Dudderar* v. *Dudderar*, 116 Md. 610; *Grill* v. *O'Dell*, 113 Md. 631; *Moore* v. *McDonald*, 68 Md. 338; *Griffith* v. *Diffenderfer*, 50 Md. 466; *Davis* v. *Calvert*, 5 G. & J. 269.

There was no prejudice to the caveator in the rulings on the second and tenth exceptions. The questions objected to were asked in the cross-examination of expert witnesses for the caveator, and the answers were entirely favorable to his theory.

The third, fourth, sixth and seventh exceptions were reserved because of the disallowance of questions propounded to witnesses for the caveator as to their business transactions with the testator at specified periods within a year before or after the date of the codicil. These inquiries were permissible. They did not seek to elicit the *opinion* of the witnesses to whom they were addressed as to the testator's mental incapacity. Apparently the purpose was to have the witnesses describe his conduct in the transactions to which the questions referred. This is an approved method of investigating a testator's mental condition. While the issue to be decided is concerned exclusively with his capacity at the time of the testamentary act, it is admissible to prove his prior and subsequent conduct and conversations as reflecting upon his mental capacity at that time. It is when a qualified witness is asked for his *opinion* of the testator's mental condition, and not merely for a description of his talk and actions, and when the opinion requested is intended to prove *incapacity,* rather than the state of capacity, which the law ordinarily presumes, that the interrogatory must be specifically directed to the time when the testamentary act was performed. *Harris* v. *Hipsley,* 122 Md. 430; *Brashears* v. *Orme,* 93 Md. 451; *Gesell* v. *Baugher,* 100 Md. 682; *Grill* v. *O'Dell,* 113 Md. 644; *Jones* v. *Collins,* 94 Md. 410; *Moore* v. *McDonald, supra; Davis* v. *Calvert, supra.*

Exceptions twelve to nineteen, inclusive, were taken to the admission of testimony by witnesses for the caveatees as to various business transactions with the testator before and after the execution of the codicil, the objection to this testimony being evidently induced by the exclusion of the questions asked the caveator's witnesses on the same subject. The reasons which render the rulings on the third, fourth, sixth and seventh exceptions erroneous are conclusive as to the propriety of the rulings on the twelfth to nineteenth exceptions.

The fifth, eighth and ninth exceptions refer to the refusal to allow certain questions relating to the physical condition

of the testator from 1915 to the spring of 1917. It does not appear that these rulings resulted in any material injury to the caveator, in view of the evidence actually admitted on the subject; but we see no sufficient reason why the questions should not have been allowed. It was said by CHIEF JUDGE BUCHANAN in *Davis* v. *Calvert,* 5 G. & J. 300, and repeated by CHIEF JUDGE BOYD, in *Harris* v. *Hipsley,* 122 Md. 430, that upon the question of a testator's mental capacity and "for the purpose of shedding light upon the state of his mind, at the time the will or testament was made, evidence of its condition, and of his bodily imbecility, both before and after that period, may be produced."

The eleventh bill of exceptions refers to the admission of testimony on behalf of the caveatees to the effect that the portion of land allotted to the caveator by the codicil in the division of the farm, is more valuable than the part devised to his brother. As tending to refute the contention of the caveator that the division made by the codicil was unjust to him, and was procured by undue influence, we think the testimony which is the subject of this exception was properly admitted.

The action on the twentieth exception was free of error. It overruled an objection to testimony by one of the caveatees' witnesses as to a conversation with the testator, in which he spoke of his relations with the caveator as affected by the division of the farm.

The twenty-first, twenty-second and twenty-third exceptions relate to hypothetical questions addressed to medical experts called by the caveatees. The objection raised to the questions is that they insufficiently and incorrectly present the facts to be assumed by the witnesses as the basis of the opinions they were asked to express in regard to the capacity of the testator to make a valid deed or contract. A careful examination of the hypothetical questions has not convinced us that they are objectionable. In *Grill* v. *O'Dell,* 113 Md. 640, we said: "Hypothetical questions are not required to

include all the facts in evidence; and when they are challenged for any supposed defects, the sole inquiry to which the mind of the Court is directed is whether they contain a fair presentation of the case as proven. *Berry Will case,* 93 Md. 569; *Williams* v. *State,* 64 Md. 384." This requirement seems to be met by the hypothetical questions to which these exceptions refer.

The only other exception is the twenty-fourth, which relates to the instructions. All the prayers offered by the caveator were either conceded or granted, and each of the four instructions granted at the request of the caveatees conforms to the rulings of this Court in reference to the submission to the jury of the issues of mental capacity and undue influence.

For the errors we have specified, the rulings thus affected will be reversed, and the cause remanded for a new trial.

*Rulings reversed and cause remanded.*