# T. BENTON DAUGHERTY et al.

## vs.

## THOMAS H. ROBINSON, Executor.

*Testamentary Capacity — Evidence—Expert Testimony—Examination of Witness—Issues from Orphans' Court.*

Where a witness to the will, upon his examination in chief, had not been asked as to the mental capacity of testatrix, and had not given his opinion thereon, testifying merely to the factum of the will, it was proper to exclude questions, asked on his cross-examination, bearing on the question of mental capacity. p. 265

Evidence that, at the home of testatrix, an article of food was in an improper receptacle was inadmissible in the absence of evidence that this was known to her. p. 265

That testatrix, a white woman, slept with a colored woman and boy, could not be proved by a witness who did not see it. p. 265

How two colored persons, who lived with testatrix, dressed, and their condition as to cleanliness, did not reflect upon the mental condition of testatrix. p. 265

The refusal to allow the caveators to ask a witness as to expressions by the testatrix of fears for her life was not cause for reversal, there being no offer to prove that such fears were without justification. p. 265

A question asked a witness as to whether, during a certain month, he noticed anything peculiar about testatrix in reference to delusions, was properly excluded, as the question was objectionable in form, and did not confine witness to a statement of facts, but permitted inferences by him. p. 265

Questions asked a witness calling for expressions of opinion as to mental incapacity on the part of testatrix at a time other than the date of the will were properly excluded. p. 266

The refusal to permit a nephew of testatrix, who had known her all his life, and whose relations with her, according to his testimony, were intimate, to express an opinion as to her capacity to make a valid deed or contract, *held* reversible error.
p. 266

On cross-examination of a witness for the caveators, a nephew of testatrix, evidence of the conviction of such witness on a charge of assault, and of the fact that testatrix was a prosecuting witness in that case, was admissible for the purpose of showing possible resentment and motive on the part of the witness.          p. 266

A witness having been asked in chief about a sign, placed by testatrix on a shop on her premises, forbidding trespassing, it was proper to allow the witness to be asked, on cross-examination, whether he ever heard her say that she wanted her nephew, one of the caveators, to keep off her place, this question tending to explain the sign.          p. 267

Evidence that testatrix, when arranging for the burial of her sister, made a gross misstatement to the undertaker as to her sister's age, was properly excluded, it not appearing whether she thought that she was giving the correct age, or was consciously making an incorrect statement for some reason of her own.          p. 267

There was no reversible error in allowing a witness to be asked whether she had any conversations with testatrix between the first of June and the twenty-third of October, the date of the execution of the will, the witness not being asked what the conversations were.          p. 267

There was error in refusing an offer to prove conversations with testatrix occurring during two years prior to the date of the will, since occurrences within a reasonable time before and after the date of the will may be proved as reflecting upon testator's mental capacity at that time.          p. 267

There was no error in refusing to permit a witness to give her opinion as to any change in testatrix's manner of talking and acting during the period of two years before the date of the will.          p. 268

That testatrix did not live up to a promise to her sister to take care of her brother in her will does not in itself reflect on her mental capacity, and evidence as to such promise was properly excluded.                                       p. 268

It was proper to exclude a question which called for the opinion of the witness as to a change in the habits and mode of speech of testatrix, without asking her for the facts on which such opinion would be based.                              p. 268

Evidence to show incapacity except as of the date of the will being inadmissible, it was proper to exclude a question asked of a witness for the caveators as to the ability of testatrix to transact business at times other than that of making her will.

p. 268

It was proper to refuse to allow a physician, an expert in mental diseases, to answer a question as to "what was the matter with" testatrix, he not having said that anything was the matter with her.                                        p. 269

The erroneous refusal to permit an expert witness, who heard all the testimony, to say whether he could base an opinion on the facts testified to, assuming them to be true, as to the mental condition of testatrix on the date of will, *held* not prejudicial, as he was not asked in that question to say what that condition was.                                              p. 269

There being testimony legally sufficient to prove testamentary incapacity, it was error to refuse to permit an expert witness to say whether, assuming the testimony to be true, testatrix was, on the date of the will, competent to execute a valid deed or contract.                                          p. 269

Questions asked of an expert witness, as to his opinion based on testimony that testatrix had stated at different times that her brother was not her brother, were properly excluded, the questions not requiring the witness to assume that the testatrix believed these statements when she made them, and hence not excluding the possibility that she knowingly told an untruth in that regard.                                            p. 269

Questions asked of an expert witness calling for abstract opinions as to certain mental diseases, unconnected by any testimony with testatrix, were properly disallowed.          p. 270

A hypothetical question, asked of an expert witness, whether, assuming that testatrix had, as testified, made statements both before and after the date of the will, that her brother was not her brother, he, the witness, would say that she had any lucid intervals sufficient to enable her to make a valid deed or contract on the date of the will, *held* properly disallowed, as confusing delusions with mental incapacity, though the question might have been proper if the witness had first testified that the alleged delusions indicated general unsoundness of mind.

p. 270

Prayers to the effect that there was no legally sufficient evidence to show that, at the time of execution of the will, testatrix was not of sound and disposing mind, or that the contents of the will were not known to or understood by her, *held* improperly granted.                    pp. 266, 270

However inconclusive the facts testified to may appear to the trial judge, if on the whole testimony an ordinarily intelligent mind could rationally find the facts necessary to be proved, the case must be submitted to the jury.          p. 270

The evidence being such as to necessitate the submission to the jury of an issue, sent from the orphans' court, as to whether testatrix was, at the time of execution of the alleged will, of sound and disposing mind and capable of executing a valid deed or contract, another issue, also transmitted from the orphans' court, whether the contents of the alleged will were read to or by testatrix, and known and understood by her, should also have been submitted.               p. 271

*Decided April 13th, 1923.*

Appeal from the Circuit Court for Harford County (HAR-LAN, J.).

Petition and caveat by T. Benton Daugherty and others as to the will of Catherine Daugherty, deceased, in which Thomas H. Robinson was named as executor. From the rulings of the court, the caveators appeal. Reversed.

The fourth exception was to evidence that the witness while at the home of testatrix, had found a piece of meat in a box in dry horse manure.

The questions disallowed in the forty-first and forty-second exceptions were as to the opinion of the witness, based on the assumption that testatrix had, as testified, said that her brother, seven years her senior, was not her brother, and that he was brought to their home when a little baby in a basket covered with a shawl.

The questions disallowed in the forty-third, forty-fourth, forty-fifth and forty-sixth exceptions were "what is senile dementia?" "What is senile paranoia?" What are the differences between these two? What are the symptoms of senile dementia?

The question disallowed in the forty-seventh exception was as follows, asked of an expert in mental diseases: "You have said that you have heard the testimony in this case from beginning to end. Assuming it to be true as given—that these statements were made in August, September and October and December—both before and after October 23rd, 1918—that Catherine Daugherty said her brother Benton, who was seven years her senior, was not her brother, that he had been brought there in a basket wrapped in a shawl as a little baby and that she remembered it well, would you say that, from the time the first statement was made until the last statement was made, that she had any lucid intervals sufficient to enable her to make a valid deed or contract on October 23rd, or at any time between these two dates?"

The second and fourth issues submitted by the Orphans' Court of Harford County were as follows: (2) Was the said paper writing dated the 23rd day of October, 1918, and purporting to be the last will and testament of the said Catherine Daugherty, executed by her when she was of sound and disposing mind and capable of executing a valid deed or contract. (4) Were the contents of the said paper writing, dated the 23rd day of October, 1918, purporting to be the last will and testament of the said Catherine Daugh-

erty, read to or by the said Catherine and known and understood by her at or before the execution thereof.

The cause was argued before Boyd, C. J., Briscoe, Thomas, Urner, and Adkins, JJ.

*R. H. Archer* and *Harry S. Carver,* with whom was *M. E. Tydings* on the brief, for the appellants.

*Stevenson A. Williams* and *Thomas H. Robinson,* with whom was *Fred R. Williams* on the brief, for the appellee.

Adkins, J., delivered the opinion of the Court.

Catherine Daugherty executed the will in controversy on October 23rd, 1918, and died February 11th, 1921, leaving as her next of kin a brother, T. Benton Daugherty, about eighty-seven years old, and several nieces and nephews, grand-nieces and grand-nephews. To one of these nieces, Mary Shaeffer, she bequeathed $3,000, and the residue of her estate she gave to this niece, and to Catherine Lloyd, a personal friend, Mary Smith, a colored woman who had been a family servant for many years and remained in her home until her death, and John Henry Fairfax Coleman, a colored boy whom testatrix had raised, and the trustees of the Southern Methodist Church situated near the village of Dublin in Harford County, to be divided between them share and share alike, the income from the part given the church to be used, as far as necessary, to keep in good condition and repair the graves of her parents and other members of her family and her own, and the rest to be used for the general purposes of the church.

The brother, and some of the other relatives, filed a caveat to the will, and issues were sent by the Orphans' Court of Harford County to the circuit court for said county, to be tried by a jury. There were four issues. The record discloses no evidence of importance bearing upon any of them except that of mental capacity.

At the conclusion of the caveators' testimony the trial court granted the four prayers of the caveatee, asking respectively for an instructed verdict on each of the four issues in favor of the caveatee. This ruling is the subject of the fiftieth bill of exception. The other fifty-one exceptions (two of these being half numbers) were to rulings of the court on the evidence.

The first three exceptions were to the refusal of questions on cross-examination of one of the attesting witnesses as to why he refused to go in testatrix's house at the time he called for her to go to Belair to make her will. The witness had not been asked in his examination in chief, nor had he given his opinion of the mental capacity of testatrix, but testified merely to the factum of the will. The questions refused were, therefore, not proper cross-examination and were properly refused.

We find no error in the fourth exception. There is nothing to show that testatrix knew of the alleged fact offered to be proved. The fifth and sixth exceptions were to the refusal by the court of the offer to prove by a nephew, Harry Daugherty, that the colored woman and boy slept with testatrix, as the witness had already testified that he **did** not see this. How these colored people dressed and their condition as to cleanliness does not reflect upon the mental condition of testatrix.

The objections made by caveatee to the questions which were the subjects of the seventh, eighth and ninth exceptions, as to remoteness of time, were not good; but there was no reversible error in the rulings, as there was no offer to prove that the fears for her life, sought to be proved, were without justification. Besides, the witness in answer to another question told all he knew about this.

The question refused in the tenth exception was whether the witness in October, 1918, had noticed anything peculiar about testatrix in reference to delusions. The ruling was correct, as the question was objectionable in form, and did not confine witness to statement of facts, but permitted inferences

by him. Apparently the witness was permitted later to state all he knew.

The questions refused in the eleventh, twelfth, thirteenth and fourteenth exceptions called for expressions of opinion as to mental incapacity at a time other than the date of the will. They were, therefore, properly ruled out.

The fifteenth exception was to the refusal to permit witness to answer the following question: "Now you have testified to changes in her mode of living, and you have enumerated them from the time of your aunt's death until October, 1918. Were there any other changes that you have not enumerated?" No reversible error. Presumably the witness, who was apparently not an unwilling witness, had stated all he knew in reference to the matter inquired about.

There was reversible error in refusing to permit the witness, Harry Daugherty, to express his opinion as to the capacity of his aunt to make a valid deed or contract at the date of the will, which ruling constituted the sixteenth exception. This witness had known the testatrix all his life, and, according to his testimony, their relations were intimate. While the facts testified to by him might not have impressed the learned trial judge, or any other judge, very strongly, as tending to show mental incapacity, yet we are not prepared to say that his entire testimony was "so utterly inconclusive or devoid of probative force as not to enable an ordinarily intelligent mind to draw a rational conclusion therefrom in support of the proposition sought to be maintained by it." *Hiss* v. *Weik,* 78 Md. 439; *Crockett* v. *Davis,* 81 Md. 151; *Harris* v. *Hipsley,* 122 Md. 432.

We find no error in the rulings on the seventeenth, seventeenth and one-half and eighteenth exceptions. They involve the propriety of the introduction in the case of evidence of the indictment and conviction of the witness, Harry Daugherty, on the charge of simple assault, and of the fact that the testatrix was a prosecuting witness in that case. The evidence was admissible, on cross-examination of the witness,

for the purpose of showing possible resentment and motive on the part of the witness.

In the eighteenth and one-half exception, the objection was to permitting the witness, Ralph Knight, to answer the question, on cross-examination, whether he ever heard testatrix say that she wanted Harry Daugherty to keep off her place. Witness had been asked in chief about a sign put by testatrix on a shop on her premises rented by him from her "no trespassing on these premises." The question on cross-examination was proper as tending to explain the sign.

The nineteenth, twentieth and twenty-first exceptions are to refusals of questions as to an alleged statement by the testatrix to the undertaker, when he was arranging for the burial of her sister Annie, that she was about twenty-five years old, when in fact she was a much older woman. It does not appear whether testatrix thought she was giving the correct age, or was consciously making an incorrect statement for some reason of her own. *Berry Will case,* 93 Md. 588. No error.

The twenty-second exception was to the refusal of the question asked Mrs. Novilla Lee as to the condition of the room occupied by testatrix from the time she got up after an illness down to and including October, 1918. No reversible error, as witness had already practically answered this question.

There was no reversible error in the twenty-third exception. Miss Lee was asked if she had any conversation with the testatrix between the middle of 1918 and October 23rd, 1918. This was a proper question. But the witness was not asked what the conversations were.

There was error in the twenty-fourth exception in refusing the offer to prove by Miss Lee conversations with testatrix occurring during the two years prior to date of will.

Occurrences within a reasonable time before and after the date of the will may be proved as reflecting upon testator's mental capacity at that time. *Davis* v. *Calvert,* 5 G. and J. 300; *Brashears* v. *Orme,* 93 Md. 451; *Jones* v. *Collins,* 94

Md. 410; *Gesell* v. *Baugher,* 100 Md. 685; *Grill* v. *O'Dell,* 113 Md. 644; *Hutchins* v. *Hutchins,* 135 Md. 404; *Harris* v. *Hipsley,* 122 Md. 430.

There was no error, however, in refusing to permit witness to give her *opinion* as to any change in testatrix's manner of talking and acting during that period.

We find no error in the twenty-fifth and twenty-sixth exceptions. The fact that testatrix did not live up to her alleged promise to her sister to take care of her brother Benton in her will does not in itself reflect upon her mental capacity.

There was no error in the twenty-seventh exception. The question refused calls for the *opinion* of the witness as to change of habits and mode of speech, and does not ask her for the facts on which such opinion would be based.

In the twenty-eighth exception the offer refused was to prove change in habits and mode of speech. This was a fluent witness, and apparently freely gave all the *facts* within her knowledge. The question and offer above referred to were not calculated to produce any new facts.

There was error in the ruling in the twenty-ninth, thirtieth, thirty-first and thirty-second exceptions, for the reasons set out in commenting on the twenty-fourth exception.

The question refused in the thirty-third exception was properly disallowed, inasmuch as it calls for the opinion of a witness for the caveators as to the ability of testatrix to transact business at other times than that of making her will. It was evidently the purpose to show incapacity, which is not admissible except as of date of will.

In the thirty-fourth exception the witness, McNabb, was asked whether, in his opinion, testatrix, on October 23rd, 1918, was capable of making a valid deed or contract. The ruling disallowing this question was correct, inasmuch as this witness' own testimony showed that at the time of testifying he was in no condition to pass on such a question.

There was no error in the thirty-fifth exception in refusing to permit Dr. Smith, an expert, to answer the question: "What was the matter with Mrs. Catherine Daugherty?" as the doctor had not said anything was the matter with her.

In the thirty-sixth exception there was error in refusing to permit Dr. Smith, who heard all the testimony in the case, to say whether he could base an opinion on the facts testified to, assuming them to be true, as to the mental condition of testatrix on October 23rd, 1918. But it was not prejudicial, as he was not asked in this question to say what the condition was.

The questions asked in the thirty-seventh, thirty-eighth, thirty-ninth, forty-eighth and forty-ninth exceptions were open to the same objection as was that in the thirty-fifth exception.

There was error in the fortieth exception in refusing to permit Dr. Smith to answer the question whether, assuming the testimony to be true, testatrix was, on October 23rd, 1918, competent to execute a valid deed or contract. This ruling was consistent with the previous rulings of the trial court, and was on the theory that there was no testimony in the case legally sufficient to prove mental incapacity, and, therefore, nothing on which an expert opinion could properly be based. It follows from our ruling on the sixteenth exception that we do not agree with this view. There was no question raised about the qualification of Dr. Smith as an expert.

The questions disallowed in the forty-first and forty-second exceptions were objectionable because they do not exclude the possibility that the statements made by the testatrix were metaphorical in their nature and intended merely to express her disapproval of her brother and her unwillingness to acknowledge him as a relative, and also exclude the possibility of plain lying on the part of the testatrix. In other words, the question does not require the doctor to assume that the testatrix believed these statements to be true at the time she

made them.   There was, therefore, no error in the ruling in
either exception.

The questions refused in the forty-third, forty-fourth,
forty-fifth and forty-sixth exceptions asked for abstract opin-
ions as to matters unconnected by any testimony with tes-
tatrix.   They were, therefore, properly disallowed.

The hypothetical question asked in forty-seventh exception
was properly disallowed, as it confuses delusions with mental
incapacity.   The question might have been proper if the doc-
tor had first testified that the alleged delusions indicated
general unsoundness of mind.

The fiftieth exception is to the ruling of the trial court on
the caveatee's four prayers offered at the conclusion of the
testimony of the caveators.   There was no error in granting
the first and third prayers, which, respectively, instructed the
jury that there was no legally sufficient evidence that the
testatrix had not properly executed the will, and that the
execution of said paper writing was procured by undue in-
fluence.   We find, however, that there was error in granting
the second and fourth prayers, the second being as to men-
tal incapacity, and the fourth as to knowledge and under-
standing by the testatrix of the contents of the will.   What
we have said in reference to the sixteenth exception is ap-
plicable here.   It is not for the court to pass upon the facts
in a case which a jury has been impaneled to try, except
where the court is prepared to say that on the whole case the
evidence is legally insufficient to establish the proposition
which it is encumbent upon plaintiff to prove.   However
inconclusive the facts testified to may appear to the trial
judge, if on the whole testimony an ordinarily intelligent
mind could rationally find the facts necessary to be proved,
the case must be submitted to the jury.   The question for
the trial judge is as to the legal force of the testimony and
not as to its weight.   This principle is recognized as well
in the cases cited by the appellee as in those referred to by
the appellants, and in many others.   *Crockett* v, *Davis,* 81

Md. 145; *Grill* v. *O'Dell,* 113 Md. 625; *Berry* v. *Safe Deposit & Trust Co.,* 96 Md. 45; *Gesell* v. *Baugher,* 100 Md. 677.

We refrain from discussing in detail the testimony in this case, as it must be remanded for a new trial. It is sufficient to say that we are not prepared to decide that the testimony of the caveators was entirely without probative force tending to establish the proposition contended for by them in the second issue submitted by the Orphans' Court. And if it was necessary to submit that issue it follows that the fourth issue, in view of its form, should also have been submitted. *Mitchell* v. *Slye,* 137 Md. 89.

Because of the errors pointed out, the rulings in the sixteenth, twenty-fourth and fortieth bills of exception, and in the fiftieth, in granting caveatee's second and fourth prayers, must be reversed and a new trial awarded.

> *Rulings reversed as above specified and new trial awarded.*